No. 21793.

ANDREW DZURIS, THOMAS DZURIS AND JOSEPH DZURIS *v.* GEORGE KUCHARIK.
(434 P.2d 414)

Decided December 4, 1967.

GIBSON, GIBSON, COLE & GERDES, for plaintiffs in error.

EUGENE O. BIRD, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties are here inverse to their appearance in the trial court. They will be referred to as they were aligned below or as Dzuris brothers and Kucharik, respectively.

Plaintiff and defendants own adjoining land. The Dzuris brothers' property is to the north of Kucharik's. Both properties are entirely enclosed by fences. A quarter mile east-west fence had been in place between plaintiff's and defendants' properties since the time the Dzuris brothers' parents (predecessors in title) pur-

chased the property in 1915. The Dzuris family over the years had always maintained and repaired this fence.

Since 1909, when one Waugh, predecessor in title to the Dzuris brothers' parents, built a dam across Big Sandy Creek, water has been impounded on the Dzuris brothers' property behind the dam for irrigation purposes. At high water time, which the parties and their neighbors described as flood run off's, occurring in some years sometimes once and sometimes twice, water extended to and flowed across the strip of land which is the subject matter of this law suit. Until the year 1964, the land which was thus inundated was on Kucharik's side of the east-west fence.

In the year 1959 the flood waters that flowed across this portion of the land were particularly high and turbulent. They damaged the east-west fence and also tore out Kucharik's fence posts along the north-south fence which were situated along the east boundary of Kucharik's land. Kucharik posted a sign on the east-west fence warning the Dzuris brothers "Keep your water off my land." This sign in 1959 was the first affirmative and hostile declaration by Kucharik that he claimed this land south of the east-west fence.

Nothing further was done by any one until 1964 when the Dzuris brothers had a survey made of their property. This survey showed that the quarter mile of fence between the lands of the parties was north of the true quarter section line (41 feet at the west end of the fence and 80 feet at the east end).

After the survey the Dzuris brothers tore down the quarter mile of fence and moved it south to within 18 inches north of the true quarter section line. Kucharik does not contest the accuracy of the survey.

Kucharik brought this action to recover possession of the strip of land between where the old fence was and the location of the new east-west fence, claiming ownership by adverse possession for more than 18 years prior to the commencement of the action. The Dzuris brothers

denied Kucharik's ownership by adverse possession as not being exclusive and affirmatively alleged use of the land by the impounding of the flood waters behind the dam which flowed across the strip of land in question. The Dzuris brothers counterclaimed for affirmative relief for an easement and right of way over the strip of land "over which to run and cause to be spilled the water accumulating behind the dam" in the event the court determined title to the disputed property was in plaintiff Kucharik.

The trial court made findings describing the property by metes and bounds for the first time. It found that the "old" quarter mile east-west fence was a boundary fence and that possession of the strip of land "by plaintiff has been adverse, hostile, under claim of right by the plaintiff and those under whom he claims title, and that this possession has been open, notorious, exclusive and continuous for more than eighteen (18) years prior to May 7, 1964," the date the fence was moved to the surveyed quarter section line. The trial court quieted title to the land in plaintiff and decreed "that Defendants remove the fence now existing upon Plaintiff's land and reconstruct a fence on the old fence line as it existed prior to May 9, 1964, and further, that Defendants provide sufficient spillway area or other means to provide for runoff in flood season in order to eliminate further damage to Plaintiff's property. * * *" Defendants counterclaim was denied.

■ It is to be noted that the present action arose pursuant to C.R.S. 1963, 118-7-1, under which Kucharik claims right of title by reason of adverse possession for a period of greater than 18 years. This is not a proceeding to establish a disputed boundary under C.R.S. 1963, 118-11-1 to 12, inclusive. Therefore, the only issue presented is whether the evidence supports the trial court's finding that plaintiff had established adverse possession of the land, complete with all of the necessary elements for the statutory period. We hold the court

erred. The evidence does not support a determination of adverse possession.

█ It is fundamental that to prove adverse possession the one claiming it must clearly show not only that his possession was actual, adverse, hostile and under claim of right, but that it has also been exclusive and uninterrupted for the statutory period. *Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636; *Loshbaugh v. Benzel,* 133 Colo. 49, 291 P.2d 1064.

The evidence shows that the water in the Dzuris brothers' reservoir backed up behind the dam and overflowed the strip of land here in dispute at flood times, at least during the following years: 1918, 1924, 1933, 1935, 1942, 1945, 1954, 1955 and 1959. Kucharik admitted this but said it was not "so bad" until the Dzuris brothers bulldozed out some of the silt and raised the top of the dam a few feet and extended the length thereof. This work was done between 1948 and 1950. The greatest amount of water which flowed over the property was in 1959.

█ The record shows that although the strip of land was never used by plaintiff for farming, it was used by him as pasture land for grazing cattle and horses. How extensively and how frequently is not shown. It is nevertheless clear from the record that the strip of land was occupied by the record owners at least during the many times that the water behind the dam became so high as to spill over and overflow upon this particular strip of land. For adverse possession to be effective as a means of acquiring title, the possession of the adverse claimant must be such that the true owner is wholly excluded therefrom. Any sort of joint or common possession by the adverse claimant and the record owner prevents the possession of the one claiming adversely from the requisite quality of exclusiveness. In *Vider v. Zavislan,* 146 Colo. 519, 362 P.2d 163, we find the following apt language:

"* * * We are persuaded that these circumstances [a

co-mingling of use by one party for grazing and by the record owner by the construction of a number of temporary drift fences on the land from time to time], coupled with the fact that Vider [defendant] held legal title to the property, bring into operation the rule that in case of a mixed or common possession of land by both parties to a suit, the law adjudges the rightful possession to him who holds legal title, and no length of time of possession can give title by adverse possession as against the legal title."

The judgment is reversed and the cause remanded to the trial court with directions to dismiss the action.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE KELLEY concur.