No. 22966.

RICHARD E. MOSS AND MARY E. MOSS *v.* LOUIS E. O'BRIEN, AUSTIN J. O'BRIEN, RUTH C. O'BRIEN AND ELIZABETH E. O'BRIEN.
(437 P.2d 348)

Decided February 19, 1968.

GEORGE A. HINSHAW, JORGE E. CASTILLO, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS writ of error is directed to a judgment of the District Court of Jefferson County quieting title to two strips of land approximately five feet wide and 140 feet long in the defendants in error, Louis E. O'Brien, Austin J. O'Brien, Ruth C. O'Brien and Elizabeth E. O'Brien, who were defendants in the trial court. Plaintiffs in error, Richard E. Moss and Mary E. Moss, were plaintiffs below. The parties will be referred to as plaintiffs and defendants, or by name.

Plaintiffs held record title to two parcels of land in the North Three-Fifths of Block 10, Charles N. Failing Subdivision, Jefferson County, Colorado. The O'Briens were record owners of all of the South Two-Fifths of Block 10. A fence running more or less parallel to the North line of the O'Briens' land, but some five feet north of the boundary as surveyed, cut across the south end of plaintiffs' two parcels of land, creating the two strips in dispute.

In their complaint in the trial court the plaintiffs alleged that the O'Briens had interfered with the plain-

tiffs' efforts to erect a fence along the southern boundary of their land. They sought a restraining order against such interference and a decree quieting title in the plaintiffs to the five foot strips in question. Defendants' answer claimed ownership of the two strips of land south of the fence by adverse possession and asked for a decree quieting their title thereto. Defendants also counterclaimed for actual and exemplary damages for trespass; sought an order restraining the plaintiffs from interfering with their possession, and asked the court to appoint a commission to determine the true boundary line between their property and plaintiffs'.

Trial was had to the court, and a final judgment was entered in favor of the defendants, quieting their title to the two strips of land south of the fence line, awarding them $86.05 as damages for trespass, and ordering plaintiffs to remove any fence or dirt they had placed on the disputed property. The court found (1) that defendants were entitled to the property by virtue of adverse possession for more than 18 years, and (2) that the fence line had been recognized and acquiesced in by the parties and their grantors for more than twenty years and constituted the true boundary between the lands of plaintiffs and defendants.

Plaintiffs contend here that the evidence adduced at the trial failed to support the court's findings, either as to adverse possession or as to acquiescence in the fence as a boundary line. We disagree.

Plaintiffs themselves point out in their brief that the following evidence is undisputed:

"A fence extending from east to west across Block 10 and located a few feet north of the imaginary east-west line separating the North Three-Fifths of Block 10 from the South Two-Fifths of Block 10 (the O'Briens' property) has been in existence since prior to 1910. This fence was located a few inches north of a ditch which carried irrigation water since prior to 1910 to approximately 1957. * * *

"It was stipulated in open court that no one other than the O'Briens occupied the real estate south of the fence since approximately 1910." (Folio references omitted.)

Undisputed evidence also showed that the irrigation water referred to was used only to irrigate the O'Briens' land, and that the O'Briens since 1910 had used the land up to the fence line for gardening and stock grazing. There is also evidence in the record from the O'Brien family and from an adjoining landowner that the O'Brien family considered the land in dispute as theirs as far back as 1910. In fact, plaintiffs' predecessor in title testified that when he suggested that a surveyor had determined that the fence was improperly placed the O'Briens rejected this suggestion, and he thereupon dropped the matter.

Plaintiffs argue that the evidence failed to establish a "hostile claim," or that defendants ever claimed to own more land than their record title showed. Implicit in their argument is the assumption that a deliberate attempt to steal a neighbor's property, or an actual dispute at some previous time is necessary in order to show an intention to hold adversely. This is not the law in Colorado. This Court has held in a case strikingly similar to the instant case that adverse intent is to be determined "by reasonable deductions from the acts as well as declarations of the parties involved." *Vade v. Sickler*, 118 Colo. 236, 240, 195 P.2d 390, 392. Actual visible possession to a given line is a circumstance from which a court may find adverse intent, even though the intention was to claim only to the true line. Whether possession is hostile and adverse is a question of fact. *Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916; *Vade v. Sickler, supra*. This record contains ample evidence to support the trial court's finding of adverse possession. Since this finding alone is sufficient to sustain the judgment in favor of the defendants, no useful purpose would be served by a lengthy discussion

concerning the additional findings made by the court with respect to acquiescence in the fence as a boundary line.

The judgment is affirmed.