Sherman E. CRAWFORD and Ruth W. Crawford, Plaintiffs-Appellees and Cross-Appellants,

v.

Leonora FRENCH and Roy P. Capaldo, Defendants-Appellants and Cross-Appellees.

No. 79CA1116.

Colorado Court of Appeals, Div. I.

June 25, 1981.

Rehearing Denied July 16, 1981.

George Alan Holley & Associates, Scott D. Albertson, Golden, for plaintiffs-appellees and cross-appellants.

Wolf & Slatkin, P. C., Albert B. Wolf, Denver, for defendants-appellants and cross-appellees.

VAN CISE, Judge.

Defendants, Leonora French and Roy P. Capaldo, appeal the trial court's judgment quieting title to a strip of land by adverse possession in plaintiffs, Sherman E. and Ruth W. Crawford. Defendants also appeal the court's admission of certain testimony and the awarding of an expert witness fee and air fare for deposition witnesses as costs to plaintiffs. Plaintiffs cross-appeal the trial court's finding, on defendants' counterclaim, that they had trespassed on defendants' property, and the damages awarded therefor. We affirm in part and reverse in part.

Defendants are the record owners of lot 4 and plaintiffs are the record owners of lot 5 (located adjacent to and to the east of lot 4) in Clear Creek Heights Subdivision No. 4 in Jefferson County. This dispute involves the easterly 12 to 22 feet of lot 4, adjacent to and west of lot 5.

## I

The trial court found that, when plaintiffs' predecessors purchased lot 5 in 1934, a broken down barbed wire fence ran between two old survey monuments along the western boundary of the disputed strip, and it was represented to them at that time that this fence line was the western boundary of lot 5. In 1964, defendants constructed a new fence along the old fence line and improvements were made to that fence in 1976. Plaintiffs and their predecessors in title believed that the line marked by the various fences constituted the boundary between lots 4 and 5.

An outhouse lies just east of the fence line, and has been in that location since late 1949 or early 1950. It had been used both as an operable outhouse and, since plaintiffs' purchase, as "a more or less conversation piece."

Since 1966, plaintiffs had made other use of the disputed strip. They had maintained a garden intermittently for an aggregate of four years and had minimally maintained the strip by moving rocks, cutting grass, and spraying trees, such minimal maintenance being all that was required because of the character of the property.

The court further found that defendants had made no showing that they had made any use of the disputed strip or had made any claim of right to it during the pertinent period.

■ The court's findings, being supported by sufficient evidence, are binding on us. *See Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970). Based on its findings, the court concluded that plaintiffs had established the necessary elements of adverse possession and were entitled to the disputed strip. We agree. *See Segelke v. Atkins*, 144 Colo. 558, 357 P.2d 636 (1960).

■ In July 1970, defendants granted a revocable permit to plaintiffs to use the east 20 feet of lot 4 for the installation of a septic tank and leaching field. It specified

that plaintiffs "shall be allowed to remove such barbed wire fence, ground shrub and trees as are reasonably necessary for the installation . . . and shall upon installation replace any fencing so removed." The court made no comment concerning the legal effect of this permit. However, the court's findings show that the various elements of adverse possession had been proved and that plaintiffs and their predecessors had adversely possessed the disputed strip for more than 18 years preceding July 1970. *See Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 458 P.2d 756 (1969); *Moss v. O'Brien*, 165 Colo. 93, 437 P.2d 348 (1968); *Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916 (1965); *Lively v. Wick*, 122 Colo. 156, 221 P.2d 374 (1950). Therefore, they were the absolute owners at the time they received the permit. *See Spring Valley Estates, Inc. v. Cunningham*, 181 Colo. 435, 510 P.2d 336 (1973); §§ 38–41–101(1) and 113, C.R.S.1973.

## II

■ Defendants next contend that the trial court erred in relying on and refusing to strike the hearsay testimony of a surveyor who had conducted a survey for plaintiffs. A survey and legal description of the disputed strip prepared by the surveyor's firm under his supervision were admitted on direct examination without objection or voir dire of the witness. However, on cross-examination, it became apparent that the surveyor had never been to the property and that his testimony was based on his review of the survey and on what he had been told by his associates who had performed the actual survey. The court, in denying defendants' motion to strike the testimony as hearsay, noted that had the trial been before a jury, the motion might have been granted, but that, since this was a trial to the court, it would give the testimony its proper weight after hearing all of the evidence in the case. *Cf. Brayman v. National State Bank*, 180 Colo. 304, 505 P.2d 11 (1973).

In its findings, the court relied on the plaintiffs' surveyor's testimony to establish the location, dimensions, and description of the disputed strip. However, the court's refusal to strike the testimony did not harm the defendants because the only other evidence was the testimony of defendants' expert—and his conclusion was that the strip was larger. *See Davis v. Bonebrake*, 135 Colo. 506, 313 P.2d 982 (1957); *Mountz v. Apt*, 51 Colo. 491, 119 P. 150 (1911).

## III

Defendants also contend that the court erred in awarding an expert witness fee to plaintiffs' surveyor and in awarding air fare for two of plaintiffs' witnesses who came to Colorado to be deposed. We agree in part and disagree in part.

■ A $105 expert witness fee was awarded for the actual court time of plaintiffs' surveyor. *See* § 13–33–102, C.R.S. 1973. The award of such fees, and the amount thereof, is within the sound discretion of the court. *Leadville Water Co. v. Parkville Water District*, 164 Colo. 362, 436 P.2d 659 (1967); *Yeager Garden Acres, Inc. v. Summit Construction Co.*, 32 Colo.App. 242, 513 P.2d 458 (1973). We find no abuse here.

Although in the trial court they objected to all deposition expenses, defendants did not appeal the award of the reporter's appearance fee and the transcription costs. As to the air fare, the daughter and granddaughter of plaintiffs' immediate predecessor in interest came from Seattle, Washington, to Colorado to be deposed. They were not under subpoena. Their depositions indicated that they would not be in Colorado for the trial, they were not in fact at the trial, their depositions were read into the record, and their testimony was critical to establishing adverse possession.

■ Mileage fees for witnesses testifying at trial are purely statutory, *Union Pacific Railroad Co. v. Brower*, 60 Colo. 579, 155 P. 312 (1916), and are limited to fifteen cents per mile for each mile actually traveled in going from place of residence to the place named in the subpoena. Section 13–33–103, C.R.S.1973. Where the trial wit-

ness is from out of the state and is not under subpoena, he is not entitled to any mileage fee. *Union Pacific Railroad Co., supra.* In taxing costs, there is no reason for treating travel expenses for unsubpoenaed out-of-state witnesses testifying at depositions taken in the state any differently from the mileage fees for such witnesses if they testified in person at trial. Therefore, we hold that the allowance of air fare for the travel of these witnesses was improper.

## IV

Defendants pled two counterclaims. The first was for a claimed trespass by plaintiffs on the disputed strip. The second was for alleged trespass by plaintiffs in failing to remove the leaching field from defendants' property after revocation of the permit. The first counterclaim was properly dismissed in view of the court's holding that plaintiffs were the owners of the strip by adverse possession.

As to the second counterclaim, the evidence established that upon defendants' granting the permit, plaintiffs installed a septic tank and leaching field. This field commenced in lot 5, extended through the disputed strip, and continued for a distance of approximately 15 feet west of the fence line into defendants' property. In 1976, a notice of revocation, signed by defendant French, was served on plaintiffs, telling them to cease and desist from using the leaching field, to remove all leaching field material, and to restore the property to its original condition. A year later, plaintiffs ceased use of the field, but refused to remove or to pay for the removal of the materials therein.

The court concluded that the intrusion of plaintiffs' leaching field constituted a trespass on defendants' lot. It found that the amount of damage to defendants was $278 for the costs of excavating the field and $600 for the cost of restoring the property to its original condition.

Plaintiffs, in their cross-appeal, contend that the court erred in finding that they trespassed on defendants' property and in the damages awarded.

On receipt of the notice of revocation, plaintiffs were obligated to discontinue use of the portion of the leaching field located in defendants' property. Therefore, plaintiffs were guilty of trespass in continuing to use this part of the field for the year following the revocation of the permit. *See Miller v. Carnation Co.,* 33 Colo.App. 62, 516 P.2d 661 (1973). However, there was no evidence produced as to any actual damage incurred by defendants resulting from this trespass. Therefore, defendants are entitled only to nominal damages.

There is no basis for the court's awarding, as damages, defendants' excavation and restoration costs. There was nothing in the permit, drafted by defendant French, calling for removal of the leaching field materials or for restoring the property to its original condition. Furthermore, since the extension of the leaching field into defendants' property became unauthorized only after the permit was revoked, defendants are entitled to remove it to the extent that it is in their land—but at their own expense, not reimbursable by plaintiffs. *Hodgkins v. Farrington,* 150 Mass. 19, 22 N.E. 73 (1889).

The judgment quieting title to the strip in plaintiffs and awarding, as costs, the expert witness fee is affirmed. The taxation of costs for the air fare of the two deposition witnesses is reversed. The judgment for defendants on their counterclaim is reversed, and the cause is remanded to the trial court for entry of a judgment for nominal damages only.

COYTE and SMITH, JJ., concur.