**Georgia Simos RAFTOPOULOS and Constantina S. Simos, Petitioners,**

v.

**Ben MONGER and Lois Monger, Respondents.**

No. 81SC20.

Supreme Court of Colorado,
En Banc.

Jan. 10, 1983.

Rehearing Denied Jan. 31, 1983.

Harry A. Tucker, Jr., Craig, R.H. Peck, Peck & Lawrence, P.C., Craig, for petitioners.

Sharp and Black, P.C., John L.C. Black, Richard T. Casson, Steamboat Springs, for respondents.

LEE, Justice.

We granted certiorari to review the decision of the court of appeals in *Monger v. Raftopoulos,* No. 79CA0073 (Colo.App.1980). The case involves the adverse possession claim of plaintiffs-respondents Ben and Lois Monger to 120 acres of rangeland in Routt County. The record owners of the property, and the petitioners here, are Georgia Simos Raftopoulos and Constantina S. Simos (Raftopoulos).

After trial to the court judgment was entered for the plaintiffs. The court held that the Mongers had clearly established their claim of adverse possession, and quieted title to the property in them. The court of appeals affirmed. We reverse.

The record establishes that the disputed tract is bordered on the west and north by the ranch owned by Raftopoulos, and on the south and east by the ranch owned by Monger. The petitioners Raftopoulos hold legal title to the tract in question and have paid the taxes thereon since 1933. The Mongers

claim the land by adverse possession asserting that they have used the land continuously from 1934 to the present to graze cattle and horses. The Raftopoulos family disputes that claim based upon their annual usage of the land for sheep grazing.

The following evidence was presented in support of the Mongers' claim of adverse possession. Ben Monger testified that he fenced the north and west boundary of the disputed property, although the fence was not "sheep-tight" around the disputed area. He admitted that he had seen Raftopoulos sheep on this property at least twice, but he acknowledged that he could not see the disputed area from his house, and that he visited that area infrequently. He testified that he chased the sheep off the property each time he saw them. He testified that he had used the property for grazing cattle and horses from 1934 until he and his family moved off the ranch in the late 1950's, when he leased his ranch to others.

Ben Monger's son, Maurice Monger, testified that he had seen sheep many times in the wheat field adjacent to the disputed area, but that he had not seen sheep inside the disputed area. The Mongers' daughter, Benita Pringle, testified that she had always assumed the property belonged to her father, since the family had used it for so many years.

George Wheeler, Ben Monger's brother-in-law, testified that he had jointly farmed the Monger ranch during the period from 1936 to 1943. He testified that although the Mongers then kept sheep on the disputed property, along with cattle and horses, he had no knowledge of anyone else keeping sheep there. He further testified that he had helped maintain the fence on the disputed property.

Dwayne Schnelling, who rented the property from Monger in 1976, testified that he had seen 200–300 sheep on the disputed property. He stated that the sheep were moved off the property at his instance, but he testified that the Raftopoulos shepherd did not speak English. He was aware that the sheep camp was only one-half mile away.

In defense against the claim of exclusive possession, the Raftopouloses presented testimony regarding the frequency of the use of the property by them for sheep grazing. Steven Raftopoulos, manager of the Raftopoulos ranch, testified that the ranch, including the disputed acreage, was used for grazing sheep and that the rangeland was utilized in a rotating pattern for maximum grazing efficiency. Steven further stated that he had observed approximately 600 sheep grazing in the disputed area on three occasions in the years 1975 through 1977. Cleto Padilla and John Katsogiannos, two shepherds employed by Raftopoulos during the years from 1940 to the date of trial, testified by deposition that they had grazed between 1,800–2,000 Raftopoulos sheep in the disputed area every year during that period; that although the area was partially fenced with a three-strand, barbed wire fence, it was not sheep-tight; and that the sheep were able to go through and under the fence onto the disputed area. Katsogiannos, who was the shepherd assigned to use the area from the late 1960's through 1977, stated that although he had seen cattle grazing in the area, none of the Mongers had spoken to him or had excluded the Raftopoulos sheep from the area. The shepherds also testified that the disputed area was used by the Raftopoulos sheep for three to fifteen days each year, depending on the amount of available forage on the property.

The vegetation on the disputed tract consists largely of grass, serviceberry, buck brush, scrub oak, and sagebrush. Steven Raftopoulos testified that the utilization of the disputed tract for grazing was similar to usage on other areas of the Raftopoulos ranch rangeland. He explained that if the grass is young and tender, both cattle and sheep will prefer the grass. However, once the grass matures, the sheep prefer browse, the leaves of small shrubs, serviceberry, cow cabbage, and chokecherry leaves, whereas the cattle continue to prefer dry grass. Once the sheep had gone through an area, Raftopoulos did not object to neighbors grazing cattle on parts of his ranch

property. He noted that other neighbors were allowed to do likewise. Thus, it was his position that the use by Monger of the disputed area was permissive and not hostile.

A neighbor of both parties, Richard Bloomquist, testified that he had seen sheep in the disputed area six or seven times on different occasions over the years from approximately 1960 forward. Michael Duzik, who had rented the ranch from Monger in 1977, testified that Monger had told him he wanted to acquire the land and had stated that the fences there were often difficult to maintain because they were being interfered with by the Raftopoulos sheep and shepherds. He quoted Monger as saying that sheep were "always getting in there."

After reviewing the evidence, the trial court found that Raftopoulos sheep had grazed on the disputed property from time to time over the years.[1] The court concluded, however, that Raftopoulos had failed to meet the burden of refuting Monger's adverse possession claim because the precise dates the sheep had grazed on the property were not sufficiently established to demonstrate that Monger's use for grazing livestock had been interrupted. The court then determined that the Mongers had established that their possession was "actual, adverse, open and hostile and under claim of right and that it had been exclusive and uninterrupted for the statutory period." *Bushey v. Seven Lakes Reservoir Co.,* 37 Colo.App. 106, 545 P.2d 158 (1975). We reverse.

## I.

One claiming title by adverse possession has the burden of proving his claim by clear and convincing evidence. *See Howey v. Eshe,* 168 Colo. 568, 574, 452 P.2d 393, 396 (1969); *Board of County Commissioners of Ouray County v. Madsen,* 153 Colo. 247, 385 P.2d 601 (1963); *Evans v. Welch,* 29 Colo. 355, 68 P. 776 (1902). He must prove not only that his possession was actual, adverse, hostile, and under claim of right, but also that it was exclusive and uninterrupted for the statutory period. *Dzuris v. Kucharik,* 164 Colo. 278, 282, 434 P.2d 414, 416 (1967); *Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636 (1960); *Loshbaugh v. Benzel,* 133 Colo. 49, 291 P.2d 1064 (1956). Moreover, "the possession of the adverse claimant must be such that the true owner is wholly excluded therefrom. Any sort of joint or common possession by the adverse claimant and the record owner prevents the possession of the one claiming adversely from [attaining] the requisite quality of exclusiveness." *Dzuris v. Kucharik,* 164 Colo. at 282, 434 P.2d at 416; *Vider v. Zavislan,* 146 Colo. 519, 362 P.2d 163 (1961).

Our view of the evidence considered in the light most favorable to the Mongers convinces us that the requisite element of exclusive possession was not established by clear and convincing evidence. Thus, the court was in error in concluding that the Mongers had acquired title by adverse possession.

The Mongers testified that they maintained a partial fence around the prop-

---

1. The court made the following findings concerning the use of the disputed track by Raftopoulos:

   "Evidence showed that, on numerous occasions, the Plaintiff Ben A. Monger, his predecessor in interest and other persons acting in his behalf and at his direction, chased sheep out of the disputed property and, once again, maintained the fence along the western border of the disputed property in the same manner as any owner would be expected to do...."

   ....

   "The testimony is clear that the Defendants ran sheep on their ranch each and every year since approximately 1940. The Defendants did not sustain a burden of proof as to just

   when their sheep were grazed on the disputed property. This Court can only consider the evidence presented to it at the trial and not rely on conjecture. The evidence presented by the Defendants does not go beyond the establishment of the fact that occasionally sheepherders did graze sheep belonging to the Defendants around and on the disputed property. There was no evidence presented that the sheepherders had any idea where the boundaries of either the Plaintiffs or the Defendants land lay. Defendants produced other testimony that their sheep had run over the area which included the disputed property...."

   ....

erty during the statutory period; however, the evidence also showed that there were gates in the fences adjoining the disputed property, by which the Raftopoulos shepherds gained access to the property. It was admitted that the fence bordering the property was not sheep-tight, and that the sheep were able to and did easily go under and through the fence, and onto the disputed tract for grazing. The corroborated testimony of two shepherds demonstrated that the property was grazed on a regular annual basis by the Raftopoulos sheep. Moreover, the trial court specifically found that the Raftopoulos sheep had indeed grazed on the disputed property from time to time. Although the evidence established that the sheep grazed the disputed land for only a small number of days out of each year, the use to which the land was put was consistent with its arid character and the speed with which a sizeable flock of sheep could deplete its vegetation. Other portions of the Raftopoulos property were used in the same manner. We believe the evidence presented to the trial court establishes that the possession of the property was joint, and the use by the Mongers of the disputed property was permissive rather than adverse.

█ In our view, the reliance by the trial court and the court of appeals on *Bushey v. Seven Lakes Reservoir Company*, 37 Colo. App. 106, 545 P.2d 158 (1975), is misplaced. In some circumstances a mere casual entry for a limited purpose by the record owner may be insufficient to prove that the use of the property was joint. *McKelvey v. Cooper*, 165 Colo. 102, 437 P.2d 346 (1968). The evidence in the present case indicates that the Raftopoulos' entry into the disputed tract was not casual nor for a limited purpose, but rather was a part of their usual customary ranch operation, the seasonal grazing of sheep on the disputed tract.

█ Colorado cases have recognized that a presumption of adversity arises after

the claimant has demonstrated that he has been in actual and exclusive possession of the property for the statutory period. *Riggs v. McMurtry,* 157 Colo. 33, 400 P.2d 916 (1965); *Vade v. Sickler,* 118 Colo. 236, 195 P.2d 390, 391 (1948). However, the proof of adverse possession must extend beyond mere actual possession and establish that the record owner has been effectively excluded, and further, that the possession relied upon is not joint, *Dzuris v. Kucharik, supra.*

As we have noted above, the record before the court does not sustain the conclusion that the Mongers proved the requisite exclusive, uninterrupted possession to support their claim of adverse possession.[2] Therefore:

"We are persuaded that these circumstances, coupled with the fact that [Raftopoulos] held legal title to the property, bring into operation the rule that in case of a mixed or common possession of land by both parties to a suit, the law adjudges the rightful possession to him who holds legal title, and no length of time of possession can give title by adverse possession as against the legal title." (Citations omitted).

*Vider v. Zavislan,* 146 Colo. 519, 524, 362 P.2d 163, 166 (1961).

Accordingly, the judgment of the court of appeals is reversed. The case is returned to the court of appeals with directions to remand the cause to the trial court with instructions to enter a judgment and decree quieting the title to the disputed property in the record owners Raftopoulos.

---

**2.** This is not a case of occasional use of the disputed property by persons other than the owner. Such use has been held not to disrupt a claim of adverse possession. *See McKelvy v.*

*Cooper,* 165 Colo. 102, 437 P.2d 346 (1968); *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 458 P.2d 756 (1969).