**Donald P. SMITH, Jr. and Marjorie Smith, Plaintiffs–Appellees, Cross–Appellants,**

v.

**Joan HAYDEN, Defendant–Appellant,**

**and**

**Frank and Anna Riedel, Defendants, Cross–Appellees.**

**No. 87SA247.**

Supreme Court of Colorado, In Banc.

April 10, 1989.

---

Irvin M. Kent, Aurora, for plaintiffs-appellees, cross-appellants.

Robinson, Waters, O'Dorisio & Rapson, P.C., Jeremy P. Cohen, Denver, for defendant-appellant.

Jacobson & Dudgeon, Ethan Jacobson, Lakewood, for defendants, cross-appellees.

Justice LOHR delivered the Opinion of the Court.

This is an appeal and a cross-appeal from a district court judgment quieting title to

two parcels of real property in Buffalo Creek, Colorado, based on principles of adverse possession. The disputes arose when surveys disclosed that the true boundary lines separating three properties on which mountain cabins had been constructed were not where the owners or their predecessors in title had long believed them to be. The district court determined that ownership had been established by adverse possession consistent with the boundaries that historically had been believed to be correct. We affirm the judgment of the district court.[1]

## I.

At issue is the title to two strips of land, each approximately 20 feet wide and 195 feet long. One lies along the southeast boundary and one along the northwest boundary of a lot owned by Donald P. Smith, Jr., and Marjorie G. Smith in Buffalo Creek, Colorado. The lot is essentially rectangular and contains approximately one-half acre. It has 105 feet of frontage on the right-of-way for the highway between Pine Junction and Deckers and extends approximately 195 feet back from the highway right-of-way.

A lot owned by Frank Riedel and Anna Riedel borders the Smith lot on the northwest. Property owned by Joan Hayden adjoins the Smith lot on the southeast. All three properties are improved with cabins and have been used by their owners principally as summer weekend retreats.

About 25 feet easterly from each of the rear corners of the Smith lot is an iron pipe driven into the ground. These pipes were assumed by the Smiths, the Riedels and their predecessors in interest to mark the rear corners of the Smith property. In fact, as recent surveys show, the true corners of the Smith lot are about 25 feet westerly of these markers. It is undisputed that the sidelines of the Smith property are perpendicular to the rear lot line.

The present dispute was precipitated when the Smiths obtained a survey in 1983 incident to the construction of an addition to their cabin. The survey showed that a strip of land on the southeast side of the Smith property, which the Smiths originally had assumed to be theirs, was within the boundaries of the Hayden property and that a strip of land on the northwest side of the Smith property, which both the Smiths and the Riedels had assumed to belong to the Riedels, was within the boundaries of the Smith property. We refer to the properties described in the deeds and delineated on the ground by the recent surveys as the Riedel property, the Smith property, and the Hayden property. We refer to the disputed strip within the Smith property along its border with the Riedel property as the Riedel–Smith parcel and to the disputed strip within the Hayden property along its boundary with the Smith property as the Hayden–Smith parcel. A schematic diagram depicting these properties is annexed as an appendix to this opinion.

A garage historically used by the Riedels and their predecessors in title to the Riedel property is located on the Riedel–Smith parcel, within the boundaries of the Smith property. A driveway and parking area historically used by the Smiths and the persons from whom they obtained title to the Smith property is located on the Hayden–Smith parcel, within the boundaries of the Hayden property.

After the Smiths discovered the discrepancy between the true and assumed property lines, they brought the present action against the Riedels and others late in 1983 to quiet title to the Smith property, including the Riedel–Smith parcel. The Riedels answered and counterclaimed to quiet title to the Riedel property and to the Riedel–Smith parcel. The Riedels based their claim to the latter parcel on the doctrine of adverse possession.[2] The Smiths then

---

1. We accepted jurisdiction in this case at the request of the Colorado Court of Appeals because one of the parties, Donald P. Smith, Jr., is a judge of that court.

2. The Riedels also sought by counterclaim to establish the boundary in its historical location

by recognition and acquiescence pursuant to §§ 38–44–101 to –112, 16A C.R.S. (1982). The trial court did not consider this claim but instead ruled for the Riedels based on adverse possession. Because the trial court's conclusions were based on adverse possession principles under § 38–41–101, 16A C.R.S. (1982), the

amended their complaint to add Hayden as a defendant and to assert a claim by adverse possession to the Hayden–Smith parcel. Hayden answered, denying the adverse possession allegations, and counterclaimed against the Smiths to quiet title to the Hayden property, including the Hayden–Smith parcel. After all claims were at issue, the case was tried to the Jefferson County District Court. During the trial, and at the request of the parties, the trial court viewed the premises to which this litigation relates.

The trial court then issued findings of fact, conclusions of law and orders.[3] We summarize the findings and conclusions as they relate to each disputed parcel.

### A. The Riedel–Smith Parcel

The Riedel property and the Smith property were at one time owned in common by W.F. Brogoitti. Brogoitti built the Riedel cabin, the Smith cabin and two garages, one to be used in association with each cabin. Brogoitti believed the iron pipes were at the corners of the Smith property, and based on that assumption he positioned the garages so that the boundary line would pass between the two garages. In fact, however, both garages were on the Smith property.[4]

In 1953 Brogoitti conveyed the Riedel property to Thomas O. Hayden and Joan Hayden. In 1963 the Haydens conveyed the property to John A. Mathis and Mary Mathis. John A. Mathis transferred his interest to Mary Mathis, who in turn conveyed the property in 1965 to the Riedels, who continued to own it to the time of trial. From the date they acquired their property

until this litigation was commenced, the Riedels believed that the iron pipe near the back of the Smith property was the common corner of that property and the Riedel property, and that the boundary line between the Smith and Riedel properties ran between the two garages.[5] The court found that the Riedels used the Riedel–Smith parcel as if it were theirs. The court relied on the following facts: The Riedels had an oil storage drum buried behind their garage, the garage was located in the Riedel–Smith parcel, the Riedel children played in that strip, and the Riedels held barbecues during which part of that strip was used. Additionally, "although the Smiths may have stored some lumber on that strip, and the Riedels did not object, the Riedels at all times claimed that strip as their property."

Based on these findings the trial court concluded that "at all times from 1965 to the time of the trial, the Riedels['] possession of [the Riedel–Smith parcel] was actual, adverse, hostile, and under claim of right" and that their possession was "open, notorious, exclusive, and continuous" during that time.

### B. The Hayden–Smith Parcel

In 1955 Brogoitti conveyed the Smith property to Edd D. Wilson and Ethel A. Wilson. In 1961 Edd D. Wilson quit claimed his interest in the property to Ethel A. Wilson. In 1963 Ethel A. Wilson conveyed the Smith property to the Smiths, who continued to own it to the time of trial.

At the time the Smith property was conveyed to the Smiths, Edd D. Wilson told Donald P. Smith, Jr., that the iron pipes at

statutory disputed boundary provisions are not applicable to the resolution of the issues presented on appeal. *See Dzuris v. Kucharik,* 164 Colo. 278, 281, 434 P.2d 414, 416 (1967) (appeal from adverse possession ruling does not raise issues under statutory disputed boundary provisions).

**3.** All named parties other than the Smiths, the Riedels and Hayden either disclaimed or defaulted.

**4.** The Smith garage was later demolished to make way for an addition to the Smith cabin.

**5.** The uncontroverted evidence was that the Riedels first saw the iron pipe marking the previously observed boundary in 1963 in connection with the purchase of the property by Frank Riedel's sister, Mary Mathis. At that time, Thomas O. Hayden showed the Riedels and Mathis the iron pipe and pointed out that this pipe marked the easterly corner of the lot and that the southeast boundary line of the lot ran between the two garages. On this basis, the Riedels assumed that the iron pipe marked a common corner of their property and that of the Smiths.

the back of the property marked the property corners. The court found that from the date of their acquisition of the property the Smiths believed they had title to the property defined by the location of the iron pipes. The court found that from 1957 until they sold the property to the Smiths, the Wilsons used the driveway on the Hayden–Smith parcel as the main entry to their property and that from their acquisition of the Smith property in 1963 until the date of trial the Smiths used that driveway as the main entrance to their property. The driveway was used not only for the parking of vehicles but also as a picnic area by both the Wilsons and the Smiths. Additionally, there is a sign reading "D.P. Smith, Jr." affixed to a tree located in the center of the driveway. There was never a fence between the Smith property and the Hayden property.

The Hayden property was owned by Harry Chace and Elsa Chace until 1978 when they conveyed the property to Joan Hayden.[6] In 1972 there was a conversation between Harry Chace and Donald P. Smith, Jr. (Smith), in which Chace said he had a survey that showed that the boundary between their two properties was close to the Smith house, which meant that the driveway was on the Hayden property, then owned by Chace. Smith told Chace that he and the Wilsons had used the driveway and that the Smiths were going to continue to use the driveway. Chace indicated that if there was ever a problem, he would give the Smiths a deed to the property. The trial court found that rather than being a concession of Chace's ownership, the statement made by Smith was an assertion of the Smiths' right to use the property and was consistent with their claim of ownership of the property to the iron pipe, i.e., the entire Hayden–Smith parcel.

The court also found that in 1978 Joan Hayden asked Donald P. Smith, Jr., if he knew the property line was right next to the Smith porch, and told him that she had a survey. She later showed him the survey, which depicted no improvements so that the location of the line in relation to the Smith cabin was not shown. She said that most of the driveway was on her property. Smith replied that he and the Wilsons had parked there and that he intended to continue to park there. She said that "if there is any problem with that I'll give you a deed." Again, the court found that rather than being a concession of Hayden's ownership, the statement made by Smith was an assertion of the Smiths' right to use the property and was consistent with their claim of ownership of the property to the iron stake.

### C. Trial Court's Conclusions

Based on the foregoing findings the court concluded that at all times from 1965 to the time of trial the Smiths' possession of [the Hayden–Smith parcel] was "actual, adverse, hostile, and under claim of right" as well as "open, notorious, exclusive, and continuous."

The court concluded that the Riedels had adversely possessed the Riedel–Smith parcel for eighteen years and thereby had acquired absolute ownership of that property pursuant to section 38–41–101(1), 16A C.R.S. (1982), and that the Smiths had adversely possessed the Hayden–Smith parcel for eighteen years and had obtained absolute ownership of that property pursuant to the same statute. Accordingly, the court ordered appropriate legal descriptions to be prepared and thereafter entered a decree quieting title to the Riedel–Smith parcel in the Riedels and to the Hayden–Smith parcel in the Smiths in accordance with the findings, conclusions and order previously entered.

Hayden appealed, asserting that the evidence was insufficient to support the trial court's decree quieting title to the Hayden–Smith parcel in the Smiths. The Smiths cross-appealed, asserting that the evidence was insufficient to support the trial court's decree quieting title to the Riedel–Smith parcel in the Riedels.[7] Our review of the

---

6. Joan Hayden is the same person who formerly was a co-owner of the Riedel property.

7. Hayden also alleged error on the ground that the trial court may have relied on the "agreed boundary doctrine" in reaching its conclusions.

record satisfies us that the evidence supports the decree of the district court with respect to each of the two parcels.

## II.

One claiming title by adverse possession must prove that his possession of the disputed parcel was actual, adverse, hostile, under claim of right, exclusive and uninterrupted for the statutory period. *Raftopoulos v. Monger,* 656 P.2d 1308, 1311 (Colo. 1983); *Dzuris v. Kucharik,* 164 Colo. 278, 282, 434 P.2d 414, 416 (1967). In Colorado, the statutory period is eighteen years. § 38–41–101(1), 16A C.R.S. (1982).[8] A claimant must establish the elements of adverse possession by a preponderance of the evidence. *Gerner v. Sullivan,* 768 P.2d 701, 705–706 (Colo.1989); *see* § 13–25–127(1), 6A C.R.S. (1987) (burden of proof in any civil action shall be by a preponderance of the evidence).

■ A presumption that the possession is adverse arises after the claimant has demonstrated that he has been in actual and exclusive possession of the property for the statutory period. *Raftopoulos,* 656 P.2d at 1312. In order to merit this presumption, the claimant's use must be "sufficiently open and obvious to apprise the true owner, in the exercise of reasonable diligence, of an intention to claim adversely." *Hodge v. Terrill,* 123 Colo. 196, 205, 228 P.2d 984, 988 (1951) (citing *Vade v. Sickler,* 118 Colo. 236, 239–40, 195 P.2d 390, 391 (1948)). In other words, the claimant's "proof of adverse possession must extend beyond mere actual possession and establish that the record owner has been effectively excluded, and further, that the possession relied upon is not joint." *Raftopoulos,* 656 P.2d at 1312. However, a mere casual entry for a limited purpose by the record owner is not necessarily sufficient to prove that the use of the property was joint. *See id.; Bushey v. Seven Lakes Reservoir Co.,* 37 Colo.App. 106, 109, 545 P.2d 158, 161 (1975) (entry by record owner does not destroy adverse possession when such entry is for specific and limited purpose and is consistent with the type of possession asserted by adverse claimant); *cf. McKelvy v. Cooper,* 165 Colo. 102, 105, 437 P.2d 346, 347 (1968) (mere casual intrusion by several anglers does not deprive adverse claimant of exclusive character of his possession).

■ When the boundaries of the land claimed by adverse possession are not established by fences or other barriers, and when there is no deed describing the extent of the land claimed, the adverse claimant may not claim any property not actually occupied for the statutory period. *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 14, 458 P.2d 756, 759 (1969). The extent of actual occupancy is a question of fact for the trial court to determine. In arriving at this determination, the court should consider that adverse possession by actual occupancy without a fence or other barrier does not require constant, visible occupancy or physical improvements on every square foot of the parcel claimed.

> Actual occupancy means the ordinary use to which the land is capable and such as an owner would make of it. Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's dominion over it, is sufficient.

*Id.* at 14–15, 458 P.2d at 759 (quoting *Burkhardt v. Smith,* 17 Wis.2d 132, 115 N.W.2d 540, 543–44 (1962)).

However, the trial court neither relied on nor discussed the "agreed boundary doctrine" in its findings and conclusions, and we accordingly decline to address the applicability of that doctrine for the first time on appeal. *See* note 2, above.

8. § 38–41–101(1), 16 C.R.S. (1982), provides:
   No person shall commence or maintain an action for the recovery of the title or possession or to enforce or establish any right or interest of or to real property or make an entry thereon unless commenced within eighteen years after the right to bring such action or make such entry has first accrued or within eighteen years after he or those from, by, or under whom he claims have been seized or possessed of the premises. *Eighteen years adverse possession of any land shall be conclusive evidence of absolute ownership.*
   (Emphasis added.)

Lastly, whether the claimant's possession is hostile and adverse is a question of fact to be determined "by reasonable deductions from the acts as well as declarations of the parties involved." *Moss v. O'Brien*, 165 Colo. 93, 96, 437 P.2d 348, 349 (1968) (quoting *Vade v. Sickler*, 118 Colo. 236, 240, 195 P.2d 390, 392 (1948)); *accord Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 11, 458 P.2d 756, 758 (1969). We next consider the application of these adverse possession principles to the facts of this case.

### III.

#### A. The Riedel–Smith Parcel

The Smiths argue that the trial court erred in concluding that the Riedels established title to the Riedel–Smith parcel by adverse possession. In particular, the Smiths assert that there was insufficient evidence to support the trial court's finding that the Riedels' possession of the disputed parcel was exclusive. Our review of the record, however, persuades us that the evidence was adequate to support the trial court's finding of exclusive possession by the Riedels and was otherwise sufficient to sustain the trial court's conclusion that the Riedels acquired absolute ownership of the Riedel–Smith parcel by virtue of eighteen years of adverse possession.

In *Raftopoulos v. Monger*, 656 P.2d 1308 (Colo.1983), we addressed the exclusivity element of adverse possession and noted that "[a]ny sort of joint or common possession by the adverse claimant and the record owner prevents the possession of one claiming adversely from [attaining] the requisite quality of exclusiveness." *Id.* at 1311 (quoting *Dzuris v. Kucharik*, 164 Colo. 278, 282, 434 P.2d 414, 416 (1967)). In *Raftopoulos*, we noted that not every entry onto the land by the record owner would be sufficient to establish joint use and destroy the exclusiveness of the claimant's possession. 656 P.2d at 1312. The record owner in *Raftopoulos* used the range land at issue to graze sheep on a regular annual basis in a manner consistent

with the arid character of the land. We held that this type of use was sufficient to establish the record owner's possession and preclude an adverse possession claim by the joint user who had loosely fenced the disputed parcel and had used it to graze cattle and horses. We also addressed the exclusivity issue in *Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 458 P.2d 756 (1969). In *Anderson*, we held that occasional use by the public for picnicking on part of the property being adversely claimed would not defeat the exclusive nature of the claimant's possession. *Id.* at 13–14, 458 P.2d at 759. Instead, considering the nature and use of the property as a vacation cabin, we focused on whether the claimants "acted as the average landowner would act under such circumstances to assert the exclusive nature of their possession." *Id.* at 14, 458 P.2d at 759.

In the present case, the Smiths argue that their use of the driveway on the Riedel–Smith parcel for access to the Smith garage amounted to a joint use destroying the Riedels' claim of exclusive possession. However, as our decisions in *Raftopoulos* and *Anderson v. Cold Spring Tungsten* indicate, a claimant's possession need not be absolutely exclusive in order to attain the degree of exclusivity required for adverse possession. Instead, a claimant need only act as the average landowner would to assert the exclusive. nature of the landowner's possession. *Anderson*, 170 Colo. at 14, 458 P.2d at 759. Here, the trial court found that the Riedels used the Riedel–Smith parcel as if it were their own. The Riedels used the garage located on this parcel, they parked vehicles between the garage and the highway, their children played on the disputed area, their predecessors had stored fuel oil in an underground tank still in place behind the garage, and the Riedels held barbecues during which they and their guests used portions of the parcel. Although the Smiths occasionally crossed the Riedel–Smith parcel in order to obtain access to the Smith garage while it was still in use,[9] the Smiths' children some-

---

9. The trial court found that beginning in 1957,

the Wilsons used the driveway on the Hayden–

times played in the disputed area, and the Smiths may have stored some lumber on the disputed parcel, these occasional uses amounted to only a limited entry onto the Riedel–Smith parcel that was insufficient to destroy the exclusive possession of the Riedels.

In sum, the record supports the trial court's finding that the Riedels' possession of the Riedel–Smith parcel was exclusive. *See Bushey v. Seven Lakes Reservoir Co.,* 37 Colo.App. 106, 107–09, 545 P.2d 158, 159–61 (1975) (record owner reservoir company's entry from time to time onto land to spray weeds and inspect reservoir did not interrupt exclusive possession of adverse claimant who had fenced land and farmed and pastured area up to fence line). The Smiths' limited use of the Riedel–Smith parcel in the present case does not rise to the level of use present in *Raftopoulos,* 656 P.2d at 1310–12, where the record owner's regular annual use of the disputed land to graze sheep defeated the exclusive possession element of an adverse possession claim by a neighboring owner who had loosely fenced the land and used it to graze horses and cattle. Given the nature of the disputed parcel and its potential uses, the Riedels' use was consistent with that of the average landowner in asserting the exclusive nature of the landowner's possession of such a parcel. *Anderson,* 170 Colo. at 14, 458 P.2d at 759. Accordingly, we affirm the trial court's conclusion that the Riedels' possession of the Riedel–Smith parcel was actual and exclusive for the statutory period and therefore established a presumption of adverse possession. *See Raftopoulos,* 656 P.2d at 1312. Because the Smiths did not present sufficient evidence to rebut this presumption, the trial court correctly held that the Riedels acquired absolute ownership of the Riedel–Smith parcel by virtue of adverse possession for the statutory period.

## B. The Hayden–Smith Parcel

Hayden argues that the trial court erred in concluding that the Smiths had obtained title to the Hayden–Smith parcel through adverse possession. Specifically, Hayden contends that the Smiths did not actually occupy or use the portion of the disputed parcel located behind the driveway and parking area.[10] Next, Hayden argues that the Smiths' use of the disputed property was with the permission of Hayden and Hayden's predecessor, thus precluding any claim of adverse possession. Lastly, Hayden asserts that the Smiths' possession of the disputed area was not hostile for the duration of the statutory period. We disagree with Hayden's contentions, and we conclude that the trial court properly held that the Smiths had obtained title to the entire Hayden–Smith parcel by adverse possession.

### 1.

▮▮ Hayden contends that the Smiths did not actually use or occupy that part of the Hayden–Smith parcel behind the driveway and parking area so as to give notice of exclusion from the property to the true owner or to the public. The testimony and exhibits in the record indicate that this portion of the Hayden–Smith parcel is a forested slope which extends northeasterly from the rear of the parking area to the rear property line common to all three lots at issue in this litigation. During his testimony, Donald P. Smith, Jr., acknowledged that he "really [had]n't made any use of that property." However, he also stated that he maintained a drainage ditch on the slope to prevent the soil from washing on to the driveway. Smith also added that he walked on this slope occasionally. There was no evidence in the record to show that Hayden or her predecessors had made any use of the slope or had interfered with the

Smith parcel as their main entry to the Smith property, as did the Smiths from the time they acquired the property from the Wilsons to the date of trial. From 1957 forward until the Smith garage was torn down, the evidence reflects only occasional vehicular travel across the

Riedel–Smith parcel to gain access to the Smith garage.

10. In her brief, Hayden concedes that the evidence was sufficient to establish actual use of the driveway portion of the Hayden–Smith parcel by the Smiths.

Smiths' use of the slope area and maintenance of the drainage ditch.

In order to demonstrate actual occupancy when the boundaries of an adversely possessed parcel are not fixed by fences or barriers or established by color of title, an adverse claimant need not make improvements on every square foot of the land. Instead, "[a]ctual occupancy means the ordinary use to which the land is capable and such as an owner would make of it." *Anderson*, 170 Colo. at 14–15, 458 P.2d at 759 (quoting *Burkhardt v. Smith*, 17 Wis. 2d 132, 115 N.W.2d 540, 544 (1962)). Thus, the nature of the property is critical in determining what acts by the claimant are required for actual possession. *See* 3 American Law of Property § 15.3, at 766 (A. Casner ed. 1974). "What acts will characterize possession as 'actual' depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 160 (Mo.App.1979); *see Doty v. Chalk*, 632 P.2d 644, 645 (Colo.App. 1981) ("Actual possession is established where the claimant shows that the property was used in a manner commensurate with its particular attributes.").

The property at issue here is a forested slope located to the rear of a mountain cabin lot. There are few improved uses to which such land can be put. Moreover, the Smiths were clearly claiming the portion of the Hayden–Smith parcel in front of the slope and were using it as a driveway, parking, picnic and play area. The tree in the driveway bore a sign with Donald Smith's name on it. The parties were also aware that the boundary line between the lots was a straight line perpendicular to the rear lot line, although the exact location of the boundary line was unclear. The Smiths regarded the iron pipe as their property corner. Under these circumstances, the Smiths' use of the front portion of the Hayden–Smith parcel for parking and other purposes and their maintenance of the ditch on the rear, forested portion of the parcel were sufficient to put Hayden on notice of the Smiths' claim to the entire Hayden–Smith parcel. Given the forested, sloping nature of the rear portion of the Hayden–Smith parcel, we conclude that the Smiths' limited use of the slope by maintaining the drainage ditch and their visible use of the front portion of the Hayden–Smith parcel, together with the lack of any evidence showing Hayden's use of the slope, were sufficient to demonstrate the Smiths' actual occupancy of the entire Hayden–Smith parcel. *See Anderson v. Cold Spring Tungsten*, 170 Colo. at 14–15, 458 P.2d at 759; *Holland v. Sutherland*, 635 P.2d 926, 928 (Colo.App.1981) (existence of small water spigot and a 24- to 30-inch high gas meter, combined with storage of equipment on property, was sufficient to establish actual possession of property); *Doty v. Chalk*, 632 P.2d 644, 645 (Colo.App. 1981) (use of property for farming and grazing and placing it in government soil bank program and keeping it free of weeds was suited to particular characteristics and limitations of land and thus established actual possession). Accordingly, the trial court did not err in finding that the Smiths actually possessed the entire Hayden–Smith parcel.

### 2.

Next, Hayden argues that Smith's conversations with Chace in 1972 and Hayden in 1978 regarding the location of the boundary line between the Smith and Hayden lots made the Smiths' use of the Hayden–Smith parcel permissive rather than adverse. Hayden contends that Chace's and Hayden's offers to give the Smiths a deed to the disputed area can "only be interpreted as ... permission to use that property." The trial court instead found that Smith's statements to Chace and Hayden of the Smiths' intention to continue using the Hayden–Smith parcel were assertions of the Smiths' right to ownership of the parcel and not concessions of the Chaces' or Hayden's ownership. Whether possession is adverse is a question of fact to be determined by the finder of fact. *Schoenherr v. Campbell*, 172 Colo. 306, 310, 472 P.2d 139, 141 (1970); *Anderson v. Cold Spring Tungsten*, 170 Colo. 7, 11–12, 458 P.2d 756, 758 (1969). Aside from Chace's

and Hayden's offers of a deed in response to Smith's statements of intention to make continued use of the Hayden–Smith parcel, there is no other evidence tending to show that the Smiths' possession of the Hayden–Smith parcel was permissive rather than adverse.[11]

The findings of the trier of fact must be accepted on review, unless they are so lacking in support in the record as to be clearly erroneous. *Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979). Here, we cannot say that the trial court's findings were clearly erroneous. The trial court's findings that Smith did not make a concession of ownership to Chace or Hayden are consistent with the testimony presented that the Smiths believed their property lines were defined by the iron pipes near the rear lot line. Additionally, Smith testified that although Chace and Hayden showed him surveys marking the true location of the boundary line, he could not relate these surveys to the location of the Smiths' lot since the surveys failed to include reference points such as the buildings on the Smiths' lot. Since there is support in the record for the trial court's findings regarding Smith's conversations with Chace and Hayden, these findings will not be reversed on appeal.

In any event, a concession by Smith of the Chaces' or Hayden's record ownership of the Hayden–Smith parcel would not demonstrate an intent by the Smiths not to possess the parcel adversely. *Schoenherr v. Campbell*, 172 Colo. 306, 309, 472 P.2d 139, 141 (1970) ("A recognition of record title does not demonstrate an intent not to possess adversely."); *cf. Segelke v. Atkins*, 144 Colo. 558, 560–61, 357 P.2d 636, 638 (1960) (recognition of title in another is inconsistent with theory of adverse possession in situation where initial entry was permissive, occupier denied he was claiming under adverse possession, and occupier made three separate offers to purchase land). In sum, we reject Hayden's argu-

ment that the Smiths' use of the Hayden–Smith parcel was permissive and not adverse. We affirm the findings and conclusion of the trial court that the Smiths' use of the parcel was adverse.

3.

Lastly, Hayden contends that the Smiths' possession of the Hayden–Smith parcel was not hostile for a continuous eighteen-year period. Hayden bases this argument on the same conversations and facts she relied on above to argue that the Smiths' use was permissive. That is, Hayden asserts that Smith's conversations with Chace and Hayden amounted to a recognition by the Smiths that they were not the record owners of the property and that such recognition is inconsistent with a claim of hostile intent and adverse possession.

▮ Again, we note that whether possession is hostile or adverse is a question of fact to be determined by the trier of fact. *Anderson*, 170 Colo. at 11, 458 P.2d at 758; *Moss v. O'Brien*, 165 Colo. 93, 96, 437 P.2d 348, 349 (1968). "Hostile intent is to be determined not only from the declarations of the parties but from reasonable deductions from the facts as well." *Anderson*, 170 Colo. at 11, 458 P.2d at 758. Moreover, hostile intent is based on the intention of the adverse possessor to claim exclusive ownership of the property occupied. *Id.*, 458 P.2d at 758. There is no requirement that there be a deliberate attempt to steal a neighbor's property or an actual dispute in order to show hostile intent. *Moss*, 165 Colo. at 96, 437 P.2d at 349. "Actual visible possession to a given line is a circumstance from which a court may find adverse intent, even though the intention was to claim only to the true line." *Id.*, 437 P.2d at 349.

▮ Here, the trial court's findings that the Smiths' possession was hostile is supported by the declarations of Smith contained in the testimony in the record. Ad-

---

11. This case is not one in which the possession relied upon was initially permissive. In such situations there is a presumption that the possession continues to be permissive unless and until notice or explicit disclaimer is given to the

owner by the claimant. *Segelke v. Atkins*, 144 Colo. 558, 560, 357 P.2d 636, 638 (1960); *Lovejoy v. School District No. 46*, 129 Colo. 306, 311, 269 P.2d 1067, 1069 (1954).

ditionally, the Smiths' actual use of the disputed Hayden–Smith parcel as if it were their own, and the existence of the iron pipe marking what the Smiths believed to be the corner between the lots also support the trial court's finding. Accordingly, because the trial court's finding is supported by evidence in the record, we will not reverse this factual finding on appeal. *Anderson,* 170 Colo. at 11–12, 458 P.2d at 758; *Moss v. O'Brien,* 165 Colo. at 96–97, 437 P.2d at 349; *Segelke v. Atkins,* 144 Colo. at 560, 357 P.2d at 637–38; *see Page v. Clark,* 197 Colo. at 313, 592 P.2d at 796. Thus, we affirm the trial court's finding that the Smiths' possession of the Hayden–Smith parcel was hostile.

## IV.

In sum, we affirm the conclusion of the trial court that the Riedels acquired absolute ownership of the Riedel–Smith parcel by adverse possession for the statutory period. We also affirm the conclusion of the trial court that the Smiths acquired absolute ownership of the Hayden–Smith parcel by adverse possession for the statutory period. Accordingly, we affirm the judgment and decree of the district court.

## APPENDIX

Schematic Drawing
(Not to Scale)

RIEDEL PROPERTY

Iron pipe

RIEDEL–SMITH PARCEL

Riedel
Cabin

SMITH PROPERTY

Iron pipe

Riedel
Garage

Former
Smith
Garage

HAYDEN–SMITH PARCEL

HAYDEN PROPERTY

Smith
Cabin

Pine Junction to Deckers Highway

N

Legend:

——————— Deeded boundaries

— — — — Boundaries historically
assumed correct

— — —— Driveways and Parking Areas