No. 19,886.

St. Claire Okie Hayden *v.* George D. Morrison, et al.

(382 P. [2d] 1003)

Decided June 10, 1963.     Rehearing denied July 8, 1963.

Messrs. ROTHGERBER, APPEL and POWERS, Mr. WIL-LIAM P. JOHNSON, for plaintiff in error.

Messrs. FLEMING and PATTRIDGE, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an action in rem under Rule 105 R.C.P. Colo. to quiet title to approximately four acres of land situate in Jefferson County, Colorado.

The Morrisons were plaintiffs below and Hayden is the only defendant left after several others were dismissed from the action. We shall refer to the parties by name.

The record discloses that by a pre-trial written admission the Morrisons conceded that Hayden has paid all taxes on the disputed area for the period 1942 through 1959 inclusive; and by a written stipulation acknowledged that Hayden was the record title holder of the tract during the period in dispute.

The trial court, after the presentation of detailed evidence, found for the Morrisons on the basis of adverse possession for the statutory period, but failed to state whether the possession had been continuous as well as open, notorious and hostile. Thus, as we view it, there are two material issues to be determined, one as to the propriety of the court's findings, and the other as to whether there is competent evidence to support the judgment.

The land in question involves the East ½ of the southwest ¼, Section 11, Township 4 South, Range 70 West of the 6th P.M. and specifically both a 36 foot wide strip on the north thereof which begins at the northwest corner and runs easterly to a triangular tract consisting

of part of the northeast corner of the East ½ of the Southwest ¼ of Section 11, which is connected to the 36 foot wide strip. The entire tract is described as Parcel A. It appears that Hayden was the record owner of the entire East ½ of the Southwest ¼ during the time in dispute, and that the Morrisons were the record owners of adjoining lands on both the north and east.

The record discloses that in 1916 or 1917 one Boom acquired title to what later became the Morrison lands and Parcel A was even then fenced as part of Boom's land, i.e., it was fenced off from Hayden's lands. No showing was made at the trial, however, that Boom made any adverse or permissive use of Parcel A. In 1926 Boom conveyed to the Morrisons who then lived in California. They in turn leased the lands to Drew Lloyd who occupied the property until 1936. The record is silent as to what use, if any, Lloyd made of Parcel A. In 1936 the Morrisons took possession of their deeded lands and of Parcel A, as well; they thereafter occupied both at least up to the commencement of this action in 1961 — a period of twenty-five years.

The evidence is disputed as to whether the Morrisons had leased all of the East ½ of the Southwest ¼ of Section 11 for a period of several years from one Peterson, a Hayden tenant. Suffice it to say here that there is competent evidence to support an express finding as to either party if one had been made on that issue.

■ Obviously, if the Morrisons' use was not open, notorious, hostile and adverse Hayden should prevail. *Lovejoy v. School District,* 129 Colo. 306, 269 P. (2d) 1067 (1954). And, unless the Morrisons prove their adverse use was continuous for the necessary period they cannot prevail. 2 C.J.S. *Adverse Possession,* §125; *Haymaker v. Windsor Co.,* 81 Colo. 168, 254 Pac. 768 (1927); *Surface Co. v. Grand Co.,* 114 Colo. 543, 168 P. (2d) 906 (1946).

The main thrust of Hayden's argument is that the Morrisons' use was both permissive and non-continuous

at crucial times. She contends that the Morrisons admitted using Parcel A only with her consent and at one period even subleased it from her tenant Peterson.

For a complete understanding of the conflict on these points we must refer to the record. The following is what we consider a fair summary of the testimony on these issues. In this regard Mr. Morrison testified on direct examination:

(1) That the fences in dispute have never been moved except one part thereof shortly before this dispute began and that he had repaired them many times.

(2) In response to the question: "Now, Mr. Morrison, have you been in complete possession of the property within the fence line as designated on Plaintiffs' Exhibit B (a certified survey map) since the time that you went into possession of the property in 1936?", he answered "That's right."

(3) In regard to continuity we have the following question and answer: "Q. Now, Mr. Morrison, from 1936 to the date of commencement of this action, has your possession of all of the property lying within the fence lines as indicated on Plaintiffs' Exhibit B, ever been interrupted? A. Not that I know, no."

(4) In regard to use the following appears: "Q. Now, in regard to Parcel A, Mr. Morrison, have you used the property designated as Parcel A in any manner? A. All the time. Q. To what purpose did you put Parcel A? A. I farmed it. * * *. Q. From what date did you farm Parcel A? A. From 1936 right up to '49. * * *. Q. You have used all of the property down to the commencement of this action? A. Yes."

(5) On cross examination of Mr. Morrison the following took place: "Q. *Now, then, Mr. Morrison, referring to Parcel A — strike that please. Referring to the land called the Hayden Land,* the southwest quarter of Section 11, who owned that land when you first moved in in 1936, Mr. Morrison? (Emphasis supplied.) A. Judge Orahood. * * *. Q. Approximately when did

the Haydens begin using that land, if you know Mr. Morrison? A. I can't remember the exact year. Q. Referring, Mr. Morrison, to Parcel A, were you permitted to run cattle on that? A. Yes. Q. Were you permitted to use it as you wished? A. Yes. Q. Did the Orahoods permit you to do that? A. Jack Brown had that; he turned it over to me. Q. He permitted you to use it? A. That's right. Q. Had the Hayden's permitted you to use Parcel A, Mr. Morrison? A. By renting, yes, through Mr. Peterson."

Mr. Pattridge (Attorney for Mr. Morrison) then stated: "If your Honor please, I think we ought to designate . . . MR. JOHNSON: There is a question posed. MR. PATTRIDGE: I think we ought to indicate something here. I think there is a confusion in the mind of the witness as to Parcel A. THE COURT: If you can reframe your question, if you will, please. * * * Go up to the map and point it out. * * *. Q. Were you permitted to use the land by the Orahoods, this land here in Parcel A? A. That was my land. What you just pointed, that little corner in there, was mine. I used that all the time. Q. Did they permit you to use it? A. Who? Q. Orahood. A. They didn't have nothing to do about it. That was supposed to be my ground. I used that all the time. I farmed it. Q. I believe you testified that you didn't know that that belonged to you until the survey was made, isn't that correct, in 1960? A. I figured that was mine all the time. I didn't know that I wasn't supposed to own it until after the survey was made. * * *. Q. Mr. Morrison, did you lease the southwest quarter of Section 11 from Mr. Peterson? A. I did. * * *. Q. From 1936 to 1949; have you used that corner since 1949? A. All the time. Q. How have you used it, sir? A. Just grazing. * * *. Q. Now, Mr. Morrison, when you leased that quarter section from Mr. Peterson, did you lease it as an entire quarter section? A. I didn't know whether it was a quarter section

or what it was. I just leased it. I just needed the pasture. I leased it from Mr. Peterson. * * * "

Following the above testimony the trial court stated that during the time relating to alleged permissive use that Mr. Morrison "didn't lease that portion (i.e. Parcel A). It belonged to him, if I understood him correctly." The court then had Mr. Morrison stand and designate on the map what he owned and was talking about as distinguished from what was being called the Hayden land. His answer was:

"A. This triangle in here that they claim they own. That was still inside of my fence. Everything outside of my fence was here that I leased."

Mr. Morrison's testimony as to the fence line and his use of Parcel A was substantiated by several witnesses including Walter Hunzinker for the period of 1940 to 1945 as to farming; and since 1949 for grazing; and it was also confirmed by Mrs. Morrison as to the use, and as to the fence and its repair on Parcel A.

We do not find in the record any evidence except as above mentioned on behalf of Hayden that disputes the Morrisons' claim to Parcel A except for the following matters:

1. The granting of a power line easement in 1949 along the east edge of Parcel A; and,

2. The selling of timber off the 36 foot wide strip a short time prior to this action. At that time the logger destroyed the fence on the south side of the 36 foot strip and Mr. Morrison temporarily re-erected it north of the center section line to keep his livestock in. This suit followed soon thereafter.

■ It thus appears that the trial court had to determine whether Mr. Morrison's testimony on cross examination resulted in admissions which he could not explain. The apparent inconsistencies in his testimony were fairly explained to the court's satisfaction. It heard and saw the witnesses and alone could determine where

the truth lay as to what the Morrisons claimed as their own and what use they made of it and for how long. Hayden offered no evidence to disprove the use of Parcel A by the Morrisons. The use being admittedly open and notorious left for determination only the question of whether it was continuously adverse for the statutory period.

We conclude this record with its conflicting evidence would support a determination that the use was both adverse and not permissive during the entire statutory period in question, or, the court could have found to the contrary, but failed to do either.

For this reason the case must be remanded for the entry of Findings of Fact and Conclusions of Law which expressly determine each of the prerequisites of adverse possession, to be followed by the entry of a new judgment consistent with the Findings so made.

It is so ordered.

MR. JUSTICE MOORE and MR. JUSTICE HALL dissent.

MR. JUSTICE HALL dissenting:

I concur in reversal of the judgment, but conclude that the trial court should be directed to dismiss Morrisons' complaint and to enter a decree quieting Hayden's title to the lands involved.

I am of the opinion that plaintiffs' complaint does not, with reference to Parcel A, state a claim showing the plaintiffs to be entitled to the relief requested, or any relief.

With reference to Parcel A, the only claim made thereto by Morrisons is found in the following language of the complaint: " * * * the plaintiffs have been in adverse possession of this property for a period in excess of eighteen (18) years."

Morrisons' claim is predicated on C.R.S. '53, 118-7-1, which, among other things, provides: " * * * Eighteen

years adverse possession of any land shall be conclusive evidence of absolute ownership."

True, the complaint follows the wording of the statute, but that is not enough. It is universally held that the statutory period of possession must be *continuous,* uninterrupted and adverse. Eighteen years of adverse possession is not enough. Nor are twenty-five or fifty years enough, unless at sometime there are eighteen consecutive years of *continuous, uninterrupted,* adverse possession.

The complaint failing to so allege is fatally defective.

The record clearly discloses more than eighteen years of adverse possession by Morrisons. With almost equal clarity it appears that Morrisons had *adverse possession* from sometime after 1936 to 1945 (less than nine years), followed by *permissive possession* from 1945 to 1949 (four years), then followed by *adverse possession* from 1949 until shortly before this action was commenced in 1960 (eleven years).

The majority opinion recognizes, that in order to prevail, Morrisons were required to prove eighteen years of continuous, uninterrupted, adverse possession. It would seem elementary that one who states a claim, as provided by Rule 8, Colo. R.C.P.:

" * * * a short and plain statement of the claim showing that the pleader is entitled to relief; * * * " should not be called upon to prove more than alleged in the complaint. If in order for Morrisons to prevail they had to prove eighteen years continuous adverse possession, then it follows that a complaint failing to so state does not state a claim.

The findings of the trial court are equally inadequate to sustain a judgment quieting title to parcel A in the Morrisons.

The only finding of the trial court with reference to Morrisons' title or possession is as follows:

"2. That the plaintiffs, George D. Morrison and Lillian Morrison have been in adverse possession of the prop-

erty hereinafter described for a period of more than eighteen (18) years prior to the commencement of this action."

I am persuaded that the evidence offered by Morrisons does not establish the fact of their continuous, uninterrupted, adverse possession for any period of eighteen years.

Testimony of the plaintiff George D. Morrison is to the contrary. He testified that Orahoods, predecessors in title to Hayden, had permitted him to use Parcel A.

"Q. * * *. Referring to the land called the Hayden land, the southwest quarter of Section 11 [record title to which now stands in the name of Hayden], who owned that land when you first moved in in 1936, Mr. Morrison? A. Judge Orahood. Q. How long did the Orahood family own that land, if you know? A. I don't. Q. Approximately when did the Haydens begin using that land, if you know, Mr. Morrison? A. I can't remember the exact year. Q. Referring, Mr. Morrison, to Parcel A, were you permitted to run cattle on that? A. Yes. Q. Were you permitted to use it as you wished? A. Yes. Q. Did the Orahoods permit you to do that? A. Jack Brown had that; he turned it over to me. Q. He permitted you to use it? A. That's right. Q. Had the Hayden's permitted you to use Parcel A, Mr. Morrison? A. By renting, yes, through Mr. Peterson."

Thus we see that according to the testimony of Morrison, his entry into Parcel A was permissive. Morrisons' use of Parcel A was with the permission of Orahood. The length of time that Morrisons enjoyed this permissive use by Orahoods is not disclosed by the record.

Further, it is undisputed that one Peterson was the lessee of Hayden's land from 1941 until 1961, and that during the period 1945-1949 he subleased the land to Morrisons. With reference to this sublease, Morrison testified as follows:

"Q. Mr. Morrison, did you lease the southwest quar-

ter of Section 11 from Mr. Peterson? A. I did. Q. And during what years did you lease that quarter section from Mr. Peterson? A. I don't believe I can give you the exact years. Q. Was it between 1936 and 1949? A. If I remember right, it was right around between '45 and '49. Q. Do you remember approximately how many years you leased that quarter section, Mr. Peterson? [Morrison]. A. Three, I believe. I'm not sure. THE COURT: What was the answer? A. Three, I think. Q. Did you pay for that quarter section and the lease? A. Yes. Q. How much was it a year?" A. $150.00. Q. Did you lease the entire quarter section, Mr. Morrison? A. That's right."

The foregoing testimony of Morrison clearly shows a three-year period of permissive use. Morrison did not have eighteen years of adverse use before or after this three-year period of permissive use; hence, according to his own testimony, he acquired no title to Hayden's land.

It is true that the record discloses that after Morrison had testified, as above set forth, with reference to his original entry with the permission of Orahood and his permissive possession and use under the sublease from Peterson, he was further interrogated and, apparently having become better oriented and gotten his bearings, stated that his testimony did not refer to Parcel A, and stated with reference thereto: "That was my land."

That bald legal conclusion is manifestly lacking in verity. At the time of his sublease from Peterson, 1945-1949, Morrison's adverse use had extended only from 1936 — at most, thirteen years. Needless to say, adverse use for thirteen years did not cast Morrison in his announced role of "owner."

I take the position that a party to litigation is bound by his testimony as to facts, and that to seek to explain away the effect of such testimony cannot be accomplished by stating a patently incorrect legal conclusion: "That was my land."

In my opinion, as a matter of law Morrison's evidence was insufficient to warrant any finding of eighteen consecutive years' continuous, uninterrupted, adverse possession of Parcel A. In fact his testimony proved the contrary.

The judgment should be reversed and title to Parcel A quieted in Hayden.

MR. JUSTICE MOORE joins in this dissenting opinion.