BOARD OF COUNTY COMMISSIONERS
OF CHEYENNE COUNTY, Colorado,
Plaintiff–Appellee,

v.

Lloyd RITCHEY and Margaret
E. Ritchey, Defendants–
Appellants.

No. 93CA0553.

Colorado Court of Appeals,
Div. III.

May 5, 1994.

Rehearing Denied June 30, 1994.

Certiorari Denied Feb. 13, 1995.

Shinn Lawyers, Carl M. Shinn, Wendy S. Shinn, Lamar, for plaintiff-appellee.

Gunnar E. Andersson, Colorado Springs, Lisa D. Hamilton–Fieldman, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

In this action for removal of encroachments upon real property, defendants, Lloyd and Margaret E. Ritchey, appeal from the judgment of the trial court determining that plaintiff, Board of County Commissioners of Cheyenne County, Colorado (Cheyenne County), is the owner of a piece of land at the northern boundary of defendant's farm. We affirm.

The disputed strip of land is approximately 30 feet wide and a half-mile long and has been used as an unpaved road. Several years after acquiring the property, defendants hired a surveyor to locate the section line north of their farm. They then removed an old fence and built a new fence 30 feet north of the location of the old fence at approximately the location of the section line established by the survey.

Cheyenne County filed a complaint asserting ownership of the strip of land between the original location of the fence and the section line by virtue of a 1887 county resolution which had dedicated all public lands overlying section lines as county roads. In a related argument, Cheyenne County claimed ownership by adverse possession. Defendants counterclaimed to quiet title to the disputed strip on the basis of a railroad land grant given to Union Pacific Railroad Company (Union Pacific), their remote predecessor in interest, prior to the 1887 county dedication.

After a bench trial, the court found that Cheyenne County held title to the disputed strip of land because the patent to the railroad had not issued until after the 1887 dedication. The trial court further found that Cheyenne County also had established ownership by adverse possession. Defendants appeal both determinations. Although we conclude that Cheyenne County does not own the disputed strip of land by dedication as a county road, we agree with the trial court that this dedication served as a basis for a claim of right under the alternative theory of ownership by adverse possession.

I.

In order to determine if Cheyenne County has acquired title to the disputed strip of land by adverse possession, we must first examine defendants' claim to title by virtue of the railroad land grant to Union Pacific. *See Vade v. Sickler,* 118 Colo. 236, 195 P.2d

390 (1948); *Trueblood v. Pierce*, 116 Colo. 221, 179 P.2d 671 (1947). We hold that, pursuant to that grant, the land was taken out of the public domain prior to the county dedication.

### A.

■ In April 1885, the Colorado General Assembly enacted legislation which provided that county commissioners were authorized to declare as a public highway any section or township line on the public domain pursuant to a grant by the federal government of right-of-way over public lands for that purpose. *See* Colo.Sess. Laws 1885 ch. 95, § 4 at 327; R.S. 2477 (1878) (43 U.S.C. § 932) (Repealed by Act of October 21, 1976, *see* 90 Stat. 2793, but providing the repeal would not be construed as terminating any right-of-way existing on October 21, 1976).

The trial court found that title did not pass to defendant's predecessors in interest until the patent to the railroad land grant issued in 1896. Accordingly, it determined the land was in the public domain in 1887 when it was dedicated as a public highway and thus, that the dedication of the section lines, being prior in time, established ownership in the county. We do not agree with this analysis.

Here, the county's dedication was ineffective because the railroad land was no longer in the public domain.

In the 1860s, Congress passed a series of acts designed to provide a source of funding for railroad construction throughout the western states and territories. *See* 12 Stat. ch. 120 (1862), 13 Stat. ch. 216 (1864), and 15 Stat. ch. 159 (1866) (Pacific Railroad Acts). The combined effect of the Pacific Railroad Acts was to grant to Union Pacific the odd numbered sections of land along its route at a rate of ten sections per mile of railway. These sections could then be sold, mortgaged, or timbered. The grant was to take effect as the railway line was located and the sections selected by the railway company. After completion of segments of the railway, the railway company was to be issued patents for the land from the United States government upon payment of certain survey costs.

Defendants' farm lies in one of the sections granted in this manner to Union Pacific through its predecessor, the Kansas Pacific Railway Company, when it located a part of its railway line through southeast Colorado. Union Pacific mortgaged the property on June 20, 1869. President McKinley signed, and the United States issued, a patent for the land on February 26, 1896, to the Union Pacific Railroad Company. The patent was then recorded in the records of Cheyenne County on November 27, 1896.

In 1887, the Board of County Commissioners for the County of Bent, which at that time included defendants' farm, adopted a resolution dedicating all section, township, and range lines on the public domain as public highways.

Defendants argue that the trial court erred by determining that the date of the issuance of the patent to the railroad was the date when the property was removed from public lands. We agree.

■ Public land, or land on the public domain, is land which is open to sale or other disposition under general laws. Any land to which any claims or rights of others have attached does not fall within the designation of public land. *Bardon v. Northern Pacific R.R. Co.*, 145 U.S. 535, 12 S.Ct. 856, 36 L.Ed. 806 (1892). Accordingly, contrary to the trial court's conclusion, the date of the issuance of the patent is not necessarily the date it was withdrawn from the public domain.

Pursuant to the Pacific Railroad Acts, once the railroad had designated the route of the road, an area sufficiently extended to include the granted sections was reserved from sale. *Missouri, Kansas & Texas Ry. Co. v. Kansas Pacific Ry. Co.*, 97 U.S. 491, 24 L.Ed. 1095 (1878). When the identification of the sections was complete so as to authorize the grantor to take possession, legal title to the granted land passed; an action for possession could be maintained by the company or its grantees even before the patent issued. *Curtner v. United States*, 149 U.S. 662, 13 S.Ct. 985, 37 L.Ed. 890 (1893); *see also Deseret Salt Co. v. Tarpey*, 142 U.S. 241, 12 S.Ct. 158, 35 L.Ed. 999 (1891) (transfer of lands pursuant to railroad acts was a transfer of a

present interest, not a partial or limited interest, which attaches upon the location of the road and the selection of the sections).

Thus, the location of the granted lands depended on the establishment of the railroad's route; once that route was settled, the location of the granted lands became certain. *Missouri, Kansas & Texas Ry. Co. v. Kansas Pacific Ry. Co., supra.* Accordingly, the sections selected were removed from public lands upon the filing of the map of the railroad route. *United States v. Union Pacific Ry. Co.,* 148 U.S. 562, 13 S.Ct. 724, 37 L.Ed. 560 (1893).

■ Moreover, one who has obtained a patent for land has a title which relates back to the first qualifying act which definitively located the boundaries of the claimed land so as to legitimately bar others from entry. *Scott v. Buchanan,* 64 Colo. 571, 174 P. 1123 (1918); *see also* Colo.Rev.Stat.1868, ch. LXXII, § 13 (the fact that title had not passed from the United States did not bar the grantee from maintaining an action for possession). Hence, a patent, when issued, relates back to the date of the inception of the rights of the patentee in the land. *Benson Mining & Smelting Co. v. Alta Mining & Smelting Co.,* 145 U.S. 428, 12 S.Ct. 877, 36 L.Ed. 762 (1892).

■ A patent issued to a railroad company pursuant to the Pacific Railroad Acts relates back to the date of the initial right in the railway company; a delay in the issuance of the patent does not affect the railway company's rights in the interim. *Stalker v. Oregon Short Line, R.R. Co.,* 225 U.S. 142, 32 S.Ct. 636, 56 L.Ed. 1027 (1912); *United States v. Union Pacific Ry. Co., supra.*

■ Additionally, a grant, such as one made pursuant to the Pacific Railroad Acts, functions as an appropriation which takes a tract of land out of the public domain; its validity and effect do not depend upon whether it is subject to cancellation for failure to fulfill some requirement of the grant. *Bardon v. Northern Pacific R.R. Co., supra; see also Witherspoon v. Duncan,* 71 U.S. (4 Wall.) 210, 18 L.Ed. 339 (1867) (once entry is made and the certificate of entry is delivered,

the land ceases to be a part of the public domain).

Cheyenne County argues that, nonetheless, there was no evidence that the railroad complied with the necessary prerequisites to the issuance of a patent. Specifically, it points to the absence of evidence that any map of definite location was filed, the cost of surveying the land was paid, or a certificate of completion of the line was filed.

We agree that the federal acts require these conditions to be met before a patent can issue. *See Ankeny v. Clark,* 148 U.S. 345, 13 S.Ct. 617, 37 L.Ed. 475 (1893). However, the fact that a patent issued in 1896 is conclusive proof that all necessary conditions were, in fact, previously fulfilled. *United States v. Maxwell Land–Grant, Co.,* 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949 (1887).

Moreover, it was undisputed that the northern stretch of the railway was completed between 1869 and 1872, that the grants required that construction of the railroad be completed by 1876, and that the land was originally mortgaged in 1869. Thus, we conclude that the map of definite location was filed prior to the county dedication in 1887. Any delay in the issuance of the patent is irrelevant. *See Witherspoon v. Duncan, supra* (patents emanated directly from the President; it necessarily happened that some time, even years, elapsed before they could issue in the regular course of business in the General Land Office).

Therefore, we hold that the trial court erred by finding that the disputed strip of land was not removed from the public domain until the date the patent issued. The property was severed from the public lands prior to the time of the county dedication; therefore, Cheyenne County can claim no ownership on that basis.

## B.

■ Cheyenne County argues that, even if the railroad land grant operated to remove the disputed strip of land from the public domain, the county dedication was nonetheless valid to establish county ownership because, prior to the time of the dedication, no recorded notice of ownership by Union Pacif-

ic existed in the county records. We disagree.

Cheyenne County is correct in that no recorded documents indicating ownership appear in the present county records before the 1869 mortgage was recorded on March 27, 1888. The lack of any earlier recorded notice, however, does not affect the resolution of the issues here.

According to the recording statute of the territory of Colorado in effect at the time of the original grant to Union Pacific, deeds, conveyances, and other agreements in writing affecting title to real estate took effect upon filing as to subsequent *bona fide* purchasers and encumbrancers not having notice thereof; in order to constitute a subsequent *bona fide* purchaser actual payment of consideration was required. Colo.Rev.Stat.1868, ch. XVII, § 18.

The statute in effect at the time of the county dedication was substantially identical. *See* Colo.Gen.Stat.1883, ch. XVIII, § 215; *but cf.* § 38–35–109, C.R.S. (1993 Cum.Supp.) ("All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated. No such unrecorded instrument or document shall be valid as against *any class of persons with any kind of rights* who first records, except between the parties thereto and such as have notice thereof." (emphasis added)).

According to another statute, a United States patent, like a deed or other conveyance, could be recorded in the county where the lands were situated. *See* Colo.Gen.Stat. 1883, ch. XXXVI, § 1317. This statute, however, contains none of the race/notice language contained in the recording statute.

We conclude that the recording statute that was in effect at the time of the county dedication is an enactment designed to protect subsequent purchasers of real property from unrecorded transactions of which they have no actual notice. It does not speak to grants of public lands which emanate directly from the United States.

Here, the patent issued to the railroad was evidence of such a grant. The authority under which Bent County was able to dedicate all section lines within the public domain as roads was also derived directly from the United States Congress. *See* R.S. 2477 (1878) (43 U.S.C. § 932) ("The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted.").

Thus, the absence of any recorded evidence of the grant to Union Pacific in the county records at the time of the county dedication has no effect upon whether the section line at issue here was in the public domain and, therefore, available to the county for use as a public road.

II.

■ Cheyenne County also asserts that, if it does not have ownership of the disputed strip of land through dedication, it acquired ownership of the disputed strip of land through adverse possession. The trial court agreed, and defendants argue that this determination was in error. Specifically, defendants contend that Cheyenne County failed to prove either that its possession was hostile or that its initial entry onto the land was not permissive rather than under a claim of right. Defendants also contend that the trial court failed to make specific findings as to the elements of adverse possession. We hold that the trial court was correct in finding that ownership by adverse possession had been established. We also conclude that the trial court made sufficiently specific findings as to that determination.

A.

1.

■ To acquire land by adverse possession, one must prove possession of the disputed parcel for the statutory period of 18 years and that this possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted. *Smith v. Hayden,* 772 P.2d 47 (Colo.1989); § 38–41–101(1), C.R.S. (1982 Repl.Vol. 16A). Defendants

contend that Cheyenne County did not prove that its possession was hostile. We do not agree.

The element of hostility in a claim of adverse possession arises from the intention of the adverse possessor to claim exclusive ownership of the property occupied. *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 458 P.2d 756 (1969). If it has been shown that use of a road has been open, notorious, and continuous for the prescriptive period, adverse use is presumed. *Trueblood v. Pierce, supra; Proper v. Greager,* 827 P.2d 591 (Colo.App.1992). Also, actual visible possession to a given line is a circumstance from which a court may find adverse intent. *Moss v. O'Brien,* 165 Colo. 93, 437 P.2d 348 (1968). The determination whether possession is hostile or adverse is ordinarily a question of fact. *Niles v. Churchill,* 29 Colo.App. 283, 482 P.2d 994 (1971).

Here, the record indicates that numerous witnesses testified as to personal knowledge of a fence located on the property for "as long as they could remember" until defendants moved the fence 15–25 feet to the north in 1983 or 1984. These witnesses also testified the public used the road, by the recollection of one witness, for at least 50–60 years. Further, there was evidence that the county maintained the road for at least 10 years.

Additional testimony indicated that there were electric utility transmission poles placed on either side of the road 62 feet apart. This was significant because the Rural Electric Association allows for a 60–foot right-of-way plus one foot when installing electric utility poles. Moreover, one witness had installed pipeline along the road and had obtained permission to do so from the county.

Nevertheless, defendants argue, even if the use was adverse, Cheyenne County did not prove that the original entry was adverse, rather than permissive. Thus, they contend, evidence that a notice or explicit disclaimer had been given was required before the trial court could determine that the possession was hostile to the true owners and to the world. Since there was no such evidence, they argue, there was no adverse possession.

Entry is permissive when the possessor uses the land, not by claim of right, but through recognition of the title of the owner. For example, in *Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636 (1960), the party in possession was a lessee; hence, the possession was permissive.

Although we agree that, if an entry is initially permissive, "notice or an explicit disclaimer must be given to the owner before the character of the possession becomes adverse," *Segelke v. Atkins, supra* 144 Colo. at 560, 357 P.2d at 638, we do not agree that Cheyenne County failed to prove that the initial entry was adverse.

Here, defendants rely on evidence of a newspaper notice published in 1907 which announced the county's dedication of all section lines as county roads and which advised that property owners should, in accordance with that dedication, set their section line fences thirty feet from this line and "thus save annoyance and trouble." Defendants argue that this evidence conclusively demonstrated that their predecessors permitted the county the use of the property by setting back the fence line in order to "save annoyance and trouble." We disagree.

To the contrary, this notice is logically consistent with Cheyenne County's position, discussed earlier, that the Bent County dedication declared *all* section and township lines to be public highways in 1887. This notice is also consistent with Cheyenne County's position that, pursuant to 1883 legislation, because all public highways were to be 60 feet in width, unless otherwise ordered by the board of county commissioners, 30 feet from each side of the section line was committed to use as a public highway. *See* Colo.Sess. Laws 1883 ch. 88, § 19 at 256.

Thus, Cheyenne County's initial entry on this portion of land was not by permission, but rather by the assertion of ownership through the county dedication of 1887. The evidence was sufficient to establish that Cheyenne County occupied the strip of land for a period exceeding 18 years and that this possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted.

### 2.

Additionally, all roads over private lands that have been used adversely without interruption or objection on the part of the owners for twenty consecutive years are declared to be public highways. Section 43–2–201(1)(c), C.R.S. (1993 Repl.Vol. 17). *See Town of Silver Plume v. Hudson*, 151 Colo. 394, 380 P.2d 59 (1963); *Board of County Commissioners v. Ogburn*, 38 Colo.App. 212, 554 P.2d 700 (1976); *Vade v. Sickler, supra.*

Here, the trial court found that defendants' predecessors in interest acquiesced to placement of the original fence line to demarcate the northernmost boundary of the farm for more than 20 years. Contending that there is no basis in the record to support this finding, defendants argue that Cheyenne County presented no evidence that their predecessors in interest had any knowledge that the right-of-way claimed by the county was on their land. We disagree.

The act of creating a fence can permanently establish boundaries even if there is a mutual mistake as to the location of the fence. *See Vade v. Sickler, supra; Anderson v. Cold Spring Tungsten, supra* (all that is required to establish hostility in circumstances where a boundary is at issue is that a person intend to occupy property to the boundary with the belief that the property is his own).

■ Although the mere existence of a fence does not establish adverse possession of land beyond the fence line, *Schutten v. Beck*, 757 P.2d 1139 (Colo.App.1988), when both property owners believe that the fence has marked the true boundary between the property for 18 years, there is a presumption that the holding is adverse. *Lively v. Wick*, 122 Colo. 156, 221 P.2d 374 (1950); *see also Moss v. O'Brien, supra; Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916 (1965).

Here, with record support, the trial court found that the original fence line along the north section line was treated as if it were the north boundary of defendant's property at least since the 1920s. The fence had been set back approximately 30 feet from the north section line thus allowing for the existence of a right-of-way between the section line and fence consistent with requirements of the Bent County resolution.

Therefore, pursuant to § 43–2–201(1)(c), we agree with the trial court that the disputed strip of land is a public highway as a result of its adverse use by the public for over twenty uninterrupted years. The evidence was sufficient that defendants' predecessors in interest acquiesced in the placement of the original fence line to demarcate the northernmost boundary of the farm. *See Auslaender v. MacMillan*, 696 P.2d 836 (Colo.App.1984).

### B.

Defendants also argue that the trial court did not make sufficiently specific findings of fact as to the elements of adverse possession and that, therefore, this court may not affirm the judgment without first remanding the cause to the trial court for more specific findings. We disagree.

■ A judgment awarding ownership through adverse possession must be supported by findings of fact and conclusions of law which expressly determine the prerequisites of adverse possession. *Hayden v. Morrison*, 152 Colo. 435, 382 P.2d 1003 (1963).

Here, the trial court made findings of fact as to the basis in the Bent County resolution for the claim of ownership asserted by Cheyenne County, the use of the strip of land by the public as a roadway, the treatment of the strip of land by Cheyenne County as including maintenance consistent with ownership, and the placement of the fence as the recognized northern boundary of the farm. From these findings, the trial court concluded that the possession by Cheyenne County had been hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted for longer than the statutory period. These factual findings are sufficient and supported by the record, and they will not be disturbed on appeal. *See Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

The judgment is affirmed.

CRISWELL and TAUBMAN, JJ., concur.