No. 17,215.

LOVEJOY ET AL. *v.* SCHOOL DISTRICT
NO. 46, SEDGWICK COUNTY.
(269 P. [2d] 1067)

Decided April 19, 1954.   Rehearing denied May 17, 1954.

Mr. G. E. HENDRICKS, for plaintiffs in error.

Mr. RICHARD D. DITTEMORE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

SCHOOL DISTRICT No. 46 of the County of Sedgwick, claiming that as owner in fee of approximately two acres of land in the extreme southeast corner of section 16, township 11, north range 47 west, it was wrongfully deprived of lawful possession thereof on or about August 1, 1952 by plaintiffs in error Ben Lovejoy and Phyllis Lovejoy, his wife; filed its complaint containing such allegations in substance, and prayed for recovery of possession and $650.00 damages for the unlawful withholding by defendants, now plaintiffs in error. Defendants answered, and as a first defense, alleged that the amended complaint did not state facts upon which any relief could be granted; second, admitted that defendant Phyllis Lovejoy is in possession of the land as owner in fee simple; and denied all other allegations in the complaint.

Trial was to the court, which entered its finding and judgment decreeing title in the School District, and entered judgment for $125.00 damages against defendants, who now seek review thereof.

Counsel for defendants, the Lovejoys, now plaintiffs in error, contends that there is no evidence to support the finding that School District No. 46 had acquired title by adverse possession, although it had occupied the land for more than the statutory period for school purposes, which in and of itself, was not notice to the true owners

that the District claimed title; that the court erred in holding that the mere fact alone that School District No. 68, when it became a part of School District No. 46, acquired title to the land involved by operation of law without any conveyance or transfer of title; and finally, that there was no evidence of liability of defendant Phyllis Lovejoy for damages in the sum of $125.00, or any sum. Other subordinate questions are presented which we find unnecessary to discuss or determine.

The sole question here involved is whether or not the district, by being in possession and holding school on the premises for a long period of time more than the statutory period of eighteen years, was entitled to possession and to have title quieted in it by adverse possession.

██ ██ The fact that the district had established a school on the land involved about the year 1886, and that there had been continuously conducted a school thereon until the year 1947, is not disputed. The proof offered by the School District lacks any showing of a clear, positive and unequivocal act on the part of the district during any of the time involved that would disclose its claim or right to the land by adverse possession. Mere occupancy alone seems to be relied upon until after the spring of 1947, when a question arose between Phyllis Lovejoy, the fee owner of the quarter section, and District No. 68 as to the ownership of the building. Since the building was a permanent fixture, she authorized her attorney, on April 30, 1951, to write the president of School District No. 68, requesting the Board to remove the school building. This incident was notice to the District that she claimed ownership of the land, and there appears no denial of her claim at that time. If the District then claimed ownership of the land, there then was an open opportunity for it to assert such claim of ownership; however, it consulted an attorney and then decided to claim ownership by adverse possession. By such action, a strong presumption follows that the School District, in effect, admitted that its claim was not open,

hostile and notorious, as is necessary in reliance upon adverse possession.

Numerous witnesses, of the community, were called by plaintiff, some of whom had resided there for many years, and one in particular who attended the second term of school in 1887. None of the witnesses could recall any incident whereby it was known that the District claimed ownership to the land, but all were of the same positive impression that the District owned the building. It appears that School District No. 68 comprised a large area of sparsely settled land, and in order to provide accommodation to children of the District without being required to travel long distances to school, there were three schools established, known as the North 68, Middle 68 and South 68, the school here in question being South 68. It logically is contended, although the record is not clear, that in the early days of the district, owners of land gladly permitted the establishment of a school house in their immediate community for the accommodation of their children and others in the neighborhood. There is no evidence whatever as to the manner or conditions under which the District was allowed to enter upon the land here in question, if such arrangement was ever made. Such land was state school land and time has obliterated all traces of any information that would point to the question of how the District first obtained a right to enter the land, if at all.

It is pertinent now to observe that in 1908 the State issued its patent to Bessie and Frank W. Sherman for the southeast quarter of section 16, township 11, north range 47, west of the 6th principal meridian, containing 160 acres more or less, according to the United States survey. This patent contains no reservation or exception. It is significant that if the State recognized the School District as having any rights other than by sufferance, it would have made such exception in the patent. From that date back to 1886, the time of the original occupation, the land was state school land, and

the School District, being a governmental organization, could not assert adverse possession against the State, which would be tantamount to asserting such possession against itself; therefore the period here involved necessarily is limited to the time from the date of the patent in 1908 down to the beginning of this litigation, apparently sometime in the latter part of 1952 or early 1953. The date of the entry of the trial court's decree was as of May 18, 1953.

Following 1908, when title was acquired by patent to the full 160 acres, numerous conveyances of the property were had down to March 2, 1951, the date of the deed to Phyllis Lovejoy, all without any exception or reservations as to the school land of approximately two acres, with one exception, namely, one owner gave a deed of trust to a life insurance company in which the security taken was the quarter section except a right of way for an irrigation ditch, public roads and a tract reserved for school ground not exceeding two acres. It is said that the papers for this loan transaction were prepared by the life insurance company and executed as presented. This in and of itself is no evidence whatever that the borrower did not claim or have title to the school land, but was evidence only that such was not included in the security offered and given. This deed of trust was foreclosed and the insurance company later issued its deed which naturally would be based upon the lands involved in its foreclosure proceeding, and would necessarily contain the same exception. Following the date of the deed of trust, January 12, 1950, and the date of the insurance company's deed as of the same date, the conveyances down to the present fee owner, plaintiff in error Phyllis Lovejoy, noted no exceptions as to the school land.

In 1952, School District No. 68, by consolidation, became a part of School District No. 46, and no school had been conducted on the premises for a period of five years previously. There was no conveyance of the land

involved from School District No. 68 to School District No. 46. If it be that School District No. 68 had acquired title by adverse possession, it did not follow that title vested in District No. 46 by the consolidation without a conveyance. This was a district of the third class and our statutes on consolidation of school districts contain no provision for the acquiring of lands by one district from another, except in cases of districts of the first class; therefore plaintiff School District, now defendant in error, acquired no title by operation of law.

■ The very essence of adverse possession is that the possession must be hostile, not only against the true owner, but against the world as well. An adverse claim must be hostile at its inception, because, if the original entry is not openly hostile or adverse, it does not become so, and the statute does not begin to run as against a rightful owner until the adverse claimant disavows the idea of holding for, or in subservience to another, it actually sets up an exclusive right in himself by some clear, positive and unequivocal act. The character of the possession must become hostile in order that it may be deemed to be adverse. And this hostility must continue for the full statutory period. 1 Am. Jur., p. 871, §137. The statute begins to run at the time the possession of the claimant becomes adverse to that of the owner, and this occurs when the claimant sets up title in himself by some clear, positive and unequivocal act.

■ No one representing School District No. 68 ever asserted that the District owned the land until immediately before the commencement of this action. The District, without color of title to possession, had to be in possession under an open and notorious claim of ownership. Under the circumstances here, mere occupancy was not sufficient to put any of the true owners on notice that the District claimed the land, and the burden of proof, as to open, notorious and hostile claim, is upon the District when it claims title by adverse possession without color of title. Every reasonable presumption is

made in favor of the true owner as against adverse possession. *Evans v. Welch,* 29 Colo. 355, 68 Pac. 776.

In support of the general trend of the testimony that it was never known that the District claimed the land, only the building, it is to be noted that the District first claimed that it had a full acre after that time a right of way ditch cut across the corner of the section, which left an area of more than two acres, and the school land up to the ditch as a playground, and the fences along the ditch were not shown to have been placed there by the School District. Had the District been making a claim to the ground, it follows that there would have been no uncertainty as to the extent and boundaries thereof. The school board knew almost two years before this suit was commenced that Phyllis Lovejoy claimed ownership of the land when she asked them to remove the building. If originally this was a case of permission to use the ground, it would be in subordination to the title and here the burden was upon the District to prove that such notice was given, which it failed to meet.

There is no reason to discuss the question of the judgment for damages, since our determination of the rights of the parties involved necessitates a reversal of the judgment, and that the complaint be dismissed.

The judgment is reversed and the cause remanded with direction to the trial court to dismiss the complaint.

MR. CHIEF JUSTICE STONE and MR. JUSTICE ALTER concur in the result.