No. 22415.

JUNE B. ANDERSON, JAMES A. ANDERSON, WILLIAM J. DOHERTY *v.* COLD SPRING TUNGSTEN, INC.

(458 P.2d 756)

Decided September 15, 1969. Rehearing denied October 6, 1969.

8

WILLIAM J. CASKINS, JR., ROBERT L. HERTZMAN, for plaintiffs in error.

JAMES SPELMAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

COLD SPRING TUNGSTEN, INC. (hereinafter referred to as the plaintiff) filed an action in the Boulder District Court under R.C.P. Colo. 105 in 1966 naming as defendants June B. Anderson, James A. Anderson, and William J. Doherty (all hereinafter referred to as the defendants or by name) and seeking to quiet title to certain real property located in the County of Boulder.

The defendants counterclaimed for judgment establishing title in themselves to a portion of the said property based on their alleged adverse possession for a period in excess of the statutory period. The trial judge found that the defendants were entitled to the cabin situated on the property, but not to the land upon which it was situated. He therefore denied the counterclaim and quieted the title in the plaintiff.

The facts are not in dispute. The plaintiff holds the record title to the property in question. William J. Doherty purchased a cabin located upon this property from the Boulder Rotary Club in 1930. Mr. Doherty made improvements on the cabin, and from 1930 until the time when this action was commenced, he and the members of his family including the other defendants in this action have made use of the cabin by spending weekends there during the summer months and occasionally remaining for a month or longer. The defendants have kept the cabin in repair, have posted it at one time or another to warn off trespassers, and have kept the cabin door locked and the windows shuttered during periods of nonuse. They used a portion of the land in question as follows: on one side of the cabin for toilet facilities and on the other side of the cabin for trash and garbage facilities. Mr. Doherty has paid the real estate taxes for each year since his entry on the property.

It is the contention of the defendants that (1) the trial judge committed error in finding that the original entry onto the property by Mr. Doherty in 1930 was not hostile because it was "peaceable," and (2) that the trial judge committed error in finding that the continued use and occupation of the cabin by the defendants did not amount to adverse possession of any of the property in dispute. We agree with the position of the defendants. We therefore reverse the judgment of the trial judge and remand the case to the district court for further proceedings consistent with this opinion.

I.

The trial judge found that the entry onto the property in dispute by Mr. Doherty was "peaceable" and therefore was not adverse or hostile as required by law in order to sustain a claim of adverse possession. It is true that the record here shows no evidence of force employed by the party making the entry against either the holder of the record title or against the public. But such a showing of force or actual dispute is not necessary

to constitute hostile entry so as to lay a foundation for a claim of adverse possession. The requirement that adverse possession be both hostile and adverse does not mean that there need be any violence connected with the entry onto the property or that there be any actual dispute as to ownership between the adverse possessor and the owner of the property. Such a contention was expressly rejected by this Court in *Moss v. O'Brien,* 165 Colo. 93, 437 P.2d 348, in which we stated:

"Plaintiffs argue that the evidence failed to establish a 'hostile claim,' or that defendants ever claimed to own more land than their record title showed. Implicit in their argument is the assumption that a deliberate attempt to steal a neighbor's property, or an actual dispute at some previous time is necessary in order to show an intention to hold adversely. This is not the law in Colorado."

Hostility arises from the intention of the adverse possessor to claim exclusive ownership of the property occupied. No specific intent directed toward the property owner is required. This has been made amply clear in the boundary cases decided by this Court and particularly in *Vade v. Sickler,* 118 Colo. 236, 195 P.2d 390, where the court found hostile and adverse possession even though the adverse possessor had stated that he was claiming only to what he believed to be the true boundary of his land and had no intention of claiming the land of another. All that the court in *Vade* required to establish hostility was that the person claiming adverse possession occupy the property with belief that the property is his and not another's.

Whether possession is hostile or adverse is ordinarily a question of fact. *Moss v. O'Brien, supra.* Hostile intent is to be determined not only from the declarations of the parties but from reasonable deductions from the facts as well. *Vade v. Sickler, supra.* In reviewing such issues of fact, this Court has taken the position that it will not set aside the findings of the trial

12

judge where they are sustained by competent and adequate evidence, *amply appearing from the record. Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636. But such restraint in no way limits the power of this Court to reject the findings and conclusions of the trial judge where they are not supported by any evidence in the record or where the law has not been applied correctly.

Limiting our discussion to the property actually occupied by the defendants, we find no basis in the record to support the conclusion of the trial judge that entry upon the property was not hostile and adverse. This is not a case in which the judge has been called upon to consider conflicting evidence. The uncontroverted testimony of Mr. Doherty, who is the party who made the original entry onto the property in 1930, was that he believed he had acquired ownership to and was the actual owner of some of the property upon which the cabin was situated. Testimony by the other defendants reveals that they thought that they owned the property.

There is nothing in the facts and circumstances revealed by the record that would justify a finding of non-hostile intent in the face of the specific and unrebutted testimony of the defendants to the contrary, and their actions during the years they occupied the cabin site. Nor is there any other evidence in the record from which the trial court could infer that the defendants did not claim the cabin site as their own. The trial judge stated that his finding of non-hostile intent was required because there was no evidence that the property claimed by the defendants was ever fenced or that the boundaries were ever marked, and that such failure shows a willingness to share the use and possession of the property with the public. But the failure to fence does not alone evidence non-hostile intent. The facts and circumstances in this record reveal an uncontradicted, definite intent to claim ownership to the land associated with the defendants' exclusive use of the cabin. The circumstances

relied upon by the trial judge only serve to limit the claim of the defendants and do not support a finding that there was no hostile claim to any of the property described in the counterclaim.

Because it is clear that the original entry by the defendants was hostile and adverse, it is not necessary for us to consider the weight placed by the trial judge on *Lovejoy v. School District*, 129 Colo. 306, 269 P.2d 1067. In *Lovejoy* the original entry by the school district onto the property was not adverse since the property was then owned by the state. There was no evidence that at the time the patent was issued to private owners or thereafter the school district made any claim to ownership of the property upon which the school was located. On the contrary, there was evidence that at the time the school was built on the property it was the custom of landowners to encourage use of their private property in order to obtain the services of the school for their children. Since *Lovejoy* is thus limited by its facts to a situation where original entry is not adverse, it does not control or contribute to disposal of the present controversy.

## II.

 The trial judge found that, because the public used part of the property in question for picnicking, there was no exclusive possession of the property for the statutory period. In order for possession to be exclusive, it is not necessary that all use of that property by the public be prevented. In *McKelvy v. Cooper*, 165 Colo. 102, 437 P.2d 346, this Court held that casual intrusion by fishermen would not defeat a claim of exclusive possession. In *McKelvy* the Michigan case of *Pulcifer v. Bishop*, 246 Mich. 579, 225 N.W. 3, was cited with approval. The Michigan court held that the defendant had established a claim by adverse possession to a portion of the beach even though the beach was commonly used by others for recreation and stated:

"* * * In view of the well-known tendency of people to

14

make rather free use of shores and beaches, we think defendant exercised all control of these premises that reasonably could be expected in view of their character. * * *"

In the present case, the defendants testified that during the times they occupied the cabin they would ask picnickers to leave the property. During periods of nonuse, the cabin door was locked and shutters were placed on the windows. There is no evidence of any public use of the cabin or the land which immediately surrounds it. In light of the nature of the property claimed by the defendants and in light of the nature of their use of the property as a vacation cabin, the record reveals that the defendants acted as the average landowner would act under such circumstances to assert the exclusive nature of their possession.

There remains to be considered the question of the boundaries to be fixed on the property acquired by the defendants. The boundaries of the land which the defendants claim have not been established by fences or barriers for the period of the statute of limitations. There is no deed which describes the extent of their holding. In such a case as this the parties claiming title by adverse possession may not claim any property not actually occupied by them for the statutory period.

The extent of actual occupancy must be determined by the court when ascertaining the extent of the adverse interest. While this Court has not had the opportunity to specifically discuss the concept of actual occupancy in determining the extent of an adverse claim, other courts have considered the problem.

"* * * Adverse possession without enclosure need not be characterized by a physical, constant, visible occupancy or improved by improvements of every square foot of the land.... Actual occupancy is not limited to structural encroachment which is common but is not the only physical characteristic of possession. Actual occupancy means the ordinary use to which the land is capable and

such as an owner would make of it. Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's dominion over it, is sufficient." *Burkhardt v. Smith,* 17 Wis.2d 132, 138, 115 N.W.2d 540, 543-44.

This case is remanded to the district court for a determination of the boundaries of the property to which the defendants have acquired title by actual occupancy and adverse possession. In making such boundaries and quieting defendants' title thereto, the trial court is to determine the land necessarily appurtenant to the cabin, taking into consideration the location and nature of the property, and the uses to which the property lends itself, the uses made of the property by the defendants, and the evidence of visible occupation of the property by the defendants which would give notice of their exclusive and adverse claim to the owner and the public.

The judgment is reversed and the cause is remanded with directions to proceed in accordance with the views outlined herein.

MR. JUSTICE DAY, MR. JUSTICE KELLEY, and MR. JUSTICE LEE concur.