24CA1987 Baumberger v McCulliss 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1987
Grand County District Court No. 23CV30028
Honorable Mary C. Hoak, Judge

Kathie Baumberger, individually and in her capacity as successor trustee of the Mary Digor Baumberger Revocable Life Trust,

Plaintiff-Appellant,

v.

McCulliss Oil & Gas, Inc.; C.O.T.A. Resources, Inc.; and W.D. Real Estate Investments LLC,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

Gray Bugos & Schroeder LLC, Joshua F. Bugos, Littleton, Colorado, for Plaintiff-Appellant

Taft Stettinius & Hollister LLP, Tamir Goldstein, Ryan T. Shaffer, Denver, Colorado, for Defendants-Appellees

¶ 1    In this quiet title case, the plaintiff, Kathie Baumberger, appeals the district court's grant of summary judgment in favor of the defendants, McCulliss Oil & Gas, Inc.; C.O.T.A. Resources, Inc.; and W.D. Real Estate Investments LLC (together, the defendants).[1] Baumberger contends the district court erred by (1) finding that no evidence supported her constructive trust claim; (2) finding that no dispute of material fact existed as to whether the defendants were bona fide purchasers for value; (3) finding that she could not prove the hostility or good faith elements of her adverse possession claim; (5) granting summary judgment on her unjust enrichment claim; and (6) ruling against her on two evidentiary issues.

¶ 2    We agree with Baumberger's first two contentions. Accordingly, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I.    Background

¶ 3    The dispute in this case involves the ownership of a 26.90-acre parcel of land in Grand County, Colorado (the property).  The

---

[1] Two additional defendants, Big Ray's Enterprises LLC and Teresa P. Flores, defaulted.

property was originally granted in 1938 by the United States to Baumberger's grandfather, Stephan Digor, after he homesteaded it. In 1994, Baumberger's mother, Mary Baumberger, transferred her interest in the property to Audra and Paul Coffey, who had adopted her as an adult.[2]  Paul Coffey passed away, and in 2000, Audra Coffey conveyed her interest in the property, at Mary Baumberger's direction, to Big Ray's Enterprises LLC, a company owned by Mary Baumberger's friend, Raymond Flores.

¶ 4    Mary Baumberger paid taxes on the property until her death in 2016.  After her mother passed away, Baumberger lived on the property and attempted to obtain record title by allowing the taxes to go unpaid and purchasing the resulting tax lien at a public sale in 2018.  The tax lien gave Baumberger the right to receive a treasurer's deed for the property on December 19, 2022, if the lien was not redeemed before that date.

¶ 5    In November 2022, Travis Besant, owner of the defendant C.O.T.A. Resources, saw the public notice of Baumberger's

---

[2] The property consists of a 1.12-acre eastern tract and a 25.78-acre western tract.  At the time of this transfer, a third party owned a one-sixth interest in the eastern tract.  This appeal concerns only the ownership of the remainder of the property.

application for a treasurer's deed.  After researching the property, Besant contacted Raymond Flores's widow, Teresa Flores.  On December 14, 2022, C.O.T.A. Resources and McCulliss Oil & Gas purchased Big Ray's interest in the property from Teresa Flores for $5,000 and redeemed the tax lien for $2,741.57.  Five days later, C.O.T.A. Resources and McCulliss Oil & Gas transferred their interest in the property to W.D. Real Estate.

¶ 6    In March 2023, Baumberger filed a lawsuit against the defendants, asserting claims for quiet title, declaratory judgment, adverse possession, constructive trust, and unjust enrichment.  In her complaint, she requested that the court void the December 14, 2022, sale of Big Ray's interest in the property (the December 14 sale) and declare her the rightful owner of the property based on either adverse possession or the imposition of a constructive trust.  Alternatively, if the court determined that the December 14 sale was valid, she sought damages for unjust enrichment.  The defendants answered the complaint, and W.D. Real Estate asserted counterclaims for quiet title, declaratory judgment, and eviction.

¶ 7    The defendants then moved for summary judgment on Baumberger's claims and W.D. Real Estate's counterclaims.  The

district court sua sponte dismissed W.D. Real Estate's eviction counterclaim and granted summary judgment for the defendants on all the other claims and counterclaims.

¶ 8 Baumberger now appeals.

## II. Standard of Review

¶ 9 We review de novo a district court's order granting summary judgment. *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 19.

¶ 10 Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). "In considering whether summary judgment is appropriate, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party." *Rocky Mountain*, ¶ 20.

¶ 11 "Summary judgment is a drastic remedy, and it should only be granted when it is clear that the applicable legal standards have been met." *Id.* at ¶ 21. "At the summary judgment stage, the trial

judge's function is not to weigh the evidence and decide what occurred, but to determine whether or not a genuine issue exists for the jury." *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007).

## III.    Constructive Trust

¶ 12    Baumberger contends that the district court erred by granting summary judgment on her constructive trust claim. We agree.

### A.    Relevant Law

¶ 13    "[A] constructive trust is a 'remedial device designed to prevent unjust enrichment.'" *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 45 (quoting *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737 (Colo. 1991)). "Constructive trusts 'are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" *Id.* (quoting *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979)).

¶ 14    "[A] constructive trust can arise when two parties have a 'confidential relationship' that caused one party to act less vigilantly than [they] would have . . . had [they] been dealing with a stranger." *Id.* at ¶ 46 (quoting *Page*, 592 P.2d at 798). Our supreme court has

recognized that "confidential relationships often arise between close family members." *Id.* The court has also noted that "a confidential relationship may arise when one party has justifiably reposed confidence in another, but for such a relationship to arise from a transfer of property, the transferor must be justified in his or her belief that the transferee will act in the transferor's interests." *Id.*

¶ 15 "Once a party demonstrates that a confidential relationship exists, a transaction may be set aside if that relationship has been abused." *Id.* at ¶ 47. "A party can demonstrate an abuse of the confidential relationship by showing, for example, that the party who possesses the property at issue refused to act in accordance with the parties' mutual intent." *Id.*

## B. Additional Background

¶ 16 Baumberger argued in the district court that the facts of this case warrant the "imposition of a constructive trust related to the transfers of the [property] to Paul and Audra Coffey and then to Big Ray's." Specifically, she argued that (1) "Mary Baumberger had a close, confidential relationship with both the Coffeys (who adopted Mary as an adult) and her longtime neighbor, Raymond Flores"; and (2) Mary Baumberger conveyed the property to the Coffeys, and

6

later directed Audra Coffey to convey it to Raymond Flores, in reliance on those confidential relationships, with the understanding that they would "hold [the property] in trust for her" and "reconvey the [property] only as she directed." Under Baumberger's theory, "Teresa Flores violated [the constructive trust] in December 2022 when she attempted to sell Big Ray's interest" in the property to the defendants. Accordingly, Baumberger asked the district court to impose "an equitable constructive trust whereupon neither the Coffeys nor Big Ray's . . . held legal title to the [property] but were instead trustees holding record title for the benefit of Mary Baumberger (and now her estate)."

¶ 17 In response to the defendants' motion for summary judgment, Baumberger submitted her own affidavit and that of her mother's coworker, Dollie Darrah. In her affidavit, Baumberger stated as follows:

- "Paul and Audra Coffey, husband and wife, adopted my mother as their daughter when she was an adult. I always considered Paul and Audra Coffey to be my grandparents and I always had a close relationship with them."

- "Although record title was transferred from Audra Coffey to Big Ray's Enterprises, that transfer was done at the direction of Mary K. Baumberger."

¶ 18    Darrah, in her affidavit, stated as follows:

- "Mary K. Baumberger and I were coworkers for years."

- "For a time when I lived in Grand County, I was a licensed real estate broker."

- "During that time, Mary authorized me to list the [property] for sale.  At the time I listed the property for sale, record title was in the name of Big Ray's Enterprises, LLC."

- "I discussed with Mary the fact that although she owned the [property], record title was in the name of Big Ray's Enterprises LLC.  Mary told me not to worry about it because she and Raymond Flores were good friends, and he was just holding the [p]roperty for her in his business' name."

¶ 19    In granting summary judgment to the defendants on Baumberger's constructive trust claim, the district court ruled as follows:

> Although [Baumberger] testified to Mary Baumberger's friendship with Raymond Flores, [she] offers no evidence of a confidential relationship between the two. "[T]he transferor must be justified in his or her belief that the transferee will act in the transferor's interests." *Sandstead-Corona,* [¶ 46].

> The Court concludes no reasonable inference can be drawn that a confidential relationship existed between Mary Baumberger and Audra Coffey.

### C. Discussion

¶ 20 Although the court did not explain its finding that there was "no evidence of a confidential relationship" between Mary Baumberger and Raymond Flores, we understand its citation to *Sandstead-Corona* to mean that it found no evidence that Mary Baumberger was justified in her belief that Raymond Flores would act in her interests. But Baumberger presented evidence, in Darrah's affidavit, that Mary Baumberger and Raymond Flores were "good friends" and that he had agreed to "hold[] the [p]roperty for her" in the name of his business. At the summary judgment stage, the court "must resolve all doubts as to whether an issue of fact exists against the moving party." *Mancuso,* 818 P.2d at 738. Accordingly, although the trier of fact may ultimately find this

9

evidence unpersuasive as to whether a confidential relationship existed between Mary Baumberger and Raymond Flores, we conclude that a reasonable inference may be drawn to that effect. *See id.*

¶ 21　From the district court's order, we cannot discern the basis for its ruling that "no reasonable inference can be drawn that a confidential relationship existed between Mary Baumberger and Audra Coffey." But again, Baumberger presented evidence, in her affidavit, that Audra Coffey was Mary Baumberger's adoptive mother. Because "confidential relationships often arise between close family members," *Sandstead-Corona*, ¶ 46, we conclude that a reasonable inference may be drawn that a confidential relationship existed between Mary Baumberger and Audra Coffey.

¶ 22　Thus, we conclude the district court improperly granted summary judgment on Baumberger's constructive trust claim.

## IV.　Bona Fide Purchasers

¶ 23　Next, Baumberger contends that the district court erred by finding that no dispute of material fact existed as to whether the defendants were bona fide purchasers for value. Again, we agree.

## A. Relevant Law

¶ 24    A constructive trust is not "available against a bona fide purchaser for value." *In re Marriage of Allen*, 724 P.2d 651, 658 (Colo. 1986). A purchaser is classified as a bona fide purchaser if they pay value for the property in good faith and without notice of any title defect. *Himes v. Schiro*, 711 P.2d 1281, 1283 (Colo. App. 1985). "The rationale for the bona fide purchaser defense to the imposition of a constructive trust is simply that '[a] person who has obtained the title to property for value and without notice of the claim of another to the property is not unjustly enriched if he is permitted to retain it.'" *Allen*, 724 P.2d at 657 (quoting 5 Austin W. Scott, *The Law of Trusts*, § 474, at 3454 (3d ed. 1967)). Whether a purchaser is a bona fide purchaser for value is a question of fact. *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Servs. Inc.*, 552 P.2d 522, 524 (Colo. App. 1976).

¶ 25    In Colorado, there are three types of notice: actual, constructive, and inquiry. *Martinez v. Affordable Hous. Network, Inc.*, 123 P.3d 1201, 1206 (Colo. 2005). "Actual notice occurs when a party has actual knowledge of a title defect." *Id.* Constructive notice occurs when "a [party's] search of the title records would

11

have revealed [the] defect." *Id.* Inquiry notice arises when "a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another." *Id.* (quoting *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003)). Only inquiry notice is at issue here.

¶ 26 As to inquiry notice, "notice will not be 'imputed to a purchaser if a reasonable search would prove, or would have proven, futile.'" *Id.* (quoting *Littlefield v. Bamberger*, 32 P.3d 615, 619 (Colo. App. 2001)). But if circumstances exist that would arouse the "suspicions of an ordinary purchaser," then "[i]nquiry notice imputes knowledge" upon the purchaser. *Id.* at 1207. For example, "possession of real estate is sufficient to put an interested person on inquiry notice of any legal or equitable claim the person or persons in open, notorious, and exclusive possession of the property may have." *Id.* A person has inquiry notice of a constructive trust "when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such

circumstances." *Leyden v. Citicorp Indus. Bank*, 782 P.2d 6, 12 (Colo. 1989) (citation and emphasis omitted).

### B.     Additional Background

¶ 27    Baumberger argued in the district court that the defendants were not bona fide purchasers for value because they were on inquiry notice of her claim to the property and the circumstances giving rise to a constructive trust — specifically, "the likely confidential relationship between the Baumbergers and Raymond Flores." In support of this argument, she relied on two emails sent by Besant to Brian McCulliss, the owner of McCulliss Oil & Gas, describing his research into the property, as well as Besant's deposition testimony.

¶ 28    In the first email, dated November 10, 2022, Besant noted the following:

- "Research suggests [the property] has been in the Baumberger family for a long period of time."

- "The pending TD [treasurer's deed] is from Big Ray's Enterprises[,] formerly associated with a man named Raymond Flores. Big Ray's name was recently changed to Earl C. Baumberger [Baumberger's father's name] with

the CO SOS [Colorado Secretary of State], with Kathie Baumberger as RA [registered agent]. So it appears the TD process is being used to cure title and convey property into an additional business entity of Kathie Baumberger . . . ."

- "Grand County records suggest a Baumberger relative conveyed the property to Big Ray's in 2005. I do not know if there is a connection between Raymond Flores and [the] Baumberger family but I am assuming there is because it is hard to believe he would walk away from the property otherwise."

¶ 29    In the second email, dated November 30, 2022, Besant noted the following:

- He contacted Teresa Flores to discuss the property. She "had good knowledge of the property" and had "lived on the property with Raymond Flores." She "also knew about the Baumbergers" and was "especially familiar with Mary and Earl [Baumberger's parents] (both now deceased)."

14

- He "offered $3400 for the property and explained the problems associated with . . . ownership issues, Baumberger problems, . . . [and] the likely legal battle that would ensue."

¶ 30    In his deposition, Besant testified that, when he learned that Raymond Flores had passed away, he obtained the probate records for his estate. He testified that he reviewed the documents and that they included the information that

> The personal representative has discovered that the estate does not own any real property in the state of Colorado. This information was confirmed by the IRS agent who also investigated whether there was any ownership interest in any Colorado property by the estate and determined that no such ownership interest did exist.

¶ 31    In granting summary judgment to the defendants on Baumberger's quiet title and declaratory judgment claims, the district court ruled that even if Baumberger could prove the existence of a constructive trust, it could not operate against the defendants because they were bona fide purchasers for value. Specifically, the court rejected Baumberger's argument that the defendants were on inquiry notice of a "likely confidential

15

relationship between the Baumbergers and Raymond Flores." To the contrary, the court found that "there is nothing in the record reflecting notice of . . . facts that would lead a reasonably intelligent and diligent person to inquire as to whether there are circumstances giving rise to a constructive trust" based on a confidential relationship.

## C. Discussion

¶ 32    The parties and the district court agree that, if there was a constructive trust and enough evidence in the record to place the defendants on inquiry notice of a confidential relationship, then the defendants were not bona fide purchasers, and summary judgment on Baumberger's quiet title and declaratory judgment claims was inappropriate. We have already concluded that, drawing all reasonable inferences in Baumberger's favor, *see Rocky Mountain,* ¶ 20, she offered sufficient evidence of a confidential relationship to defeat the defendants' motion for summary judgment on her constructive trust claim. We further conclude that she provided enough evidence that the defendants had inquiry notice of a confidential relationship to create a disputed issue of material fact as to whether they were bona fide purchasers.

¶ 33    Besant acknowledged in his first email to McCulliss that "it is hard to believe" that Raymond Flores (or his heir, Teresa Flores) would walk away from the property and allow Baumberger to acquire title through the treasurer's deed process unless there was "a connection between Raymond Flores and [the] Baumberger family."  He also noted that the property had been in the Baumberger family for a long time and that a Baumberger relative conveyed the property to Big Ray's, the entity that was later renamed to "Earl C. Baumberger" with Baumberger as the registered agent.  And he said it "appears" that Baumberger was using the treasurer's deed process to "cure title."[3]  Further, in his second email, he acknowledged anticipating "problems associated with . . . ownership issues," "Baumberger problems," and a "likely

---

[3] In his deposition, Besant testified that, by "cure title," he meant "trying to gain title."  But "cur[ing] title" is more commonly understood as the process of removing any title defects.  *See* Black's Law Dictionary 481 (12th ed. 2024) ("[C]ure" means "[t]o remove one or more legal defects to correct one or more legal errors. . . .  For example, curing title involves removing defects from title to unmarketable land so that title becomes marketable.").  The discrepancy between Besant's email and testimony could not be resolved by the court at the summary judgment stage.  *See Cullen v. Phillips*, 30 P.3d 828, 832 (Colo. App. 2001) (at the summary judgment phase, a court may not weigh evidence or pass judgment on the credibility of witnesses).

legal battle." This evidence, viewed in the light most favorable to Baumberger, suggests the defendants knew there was a question as to whether there was a confidential relationship between Raymond Flores and the Baumberger family.

¶ 34    Further, Besant learned from his research that both Raymond Flores's personal representative and an IRS agent had previously determined that Raymond Flores's estate did not own any property in Colorado. It was for the trier of fact to determine whether this information would have aroused the "suspicions of an ordinary purchaser," *Martinez,* 123 P.3d at 1207, thus placing the defendants on inquiry notice of a title defect and defeating their status as bona fide purchasers.

¶ 35    Because a genuine issue of material fact exists as to whether the defendants had inquiry notice of a confidential relationship that could give rise to a constructive trust, we conclude that the district court erred by determining, as a matter of law, that the defendants were bona fide purchasers. Accordingly, it improperly granted summary judgment on Baumberger's quiet title and declaratory judgment claims.

## V.    Adverse Possession

¶ 36    Baumberger contends the district court erred by finding that she could not prove the hostility or good faith elements of her adverse possession claim.  We are not persuaded.

¶ 37    To bring a successful adverse possession claim, a party must demonstrate by clear and convincing evidence that possession of the disputed area was actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for eighteen years.  *Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989); *see* § 38-41-101(1), C.R.S. 2025.  Additionally, "an adverse claimant must establish a good faith belief that he or she (or a predecessor in interest) was the property's actual owner, which belief was reasonable under the circumstances."  *Lensky v. DiDomenico*, 2016 COA 89, ¶ 25.

¶ 38    Adverse claimants need not actually possess the disputed property for eighteen years but may rely on their predecessors' use by "tacking" successive adverse possessions.  *Doty v. Chalk*, 632 P.2d 644, 646 (Colo. App. 1981).  And "[e]very reasonable presumption [must be] made in favor of the true owner as against adverse possession."  *Schuler v. Oldervik*, 143 P.3d 1197, 1202

19

(Colo. App. 2006) (quoting *Lovejoy v. Sch. Dist. No. 46*, 269 P.2d 1067, 1070 (Colo. 1954)).

¶ 39     Baumberger does not explain when she believes the adverse possession period began to run or when title vested by adverse possession.  But her arguments make clear that she is relying on her mother's possession.  It is undisputed, however, that Mary Baumberger directed the transfer of title to the property to Big Ray's.  "[H]ostile intent is based on the intention of the adverse possessor to claim exclusive ownership of the property occupied." *Id.* (quoting *Smith*, 772 P.2d at 56).  "The possession must be hostile against both the true owner and the world from its inception." *Id.* at 1203.  We thus agree with the district court that, because Mary Baumberger expressly directed title away from herself, she could not have intended to claim exclusive ownership and her possession could not have been hostile.

¶ 40     For the same reason, as the district court correctly found, Mary Baumberger could not have had "a reasonable belief that [she] was the actual owner of the [property]." *See Trask v. Nozisko*, 134 P.3d 544, 553 (Colo. App. 2006) ("[W]hen an adverse occupier acknowledges or recognizes the title of the owner during the

occupant's claimed prescriptive period, the occupant interrupts the prescriptive use.").

¶ 41     Because we agree with the district court that Baumberger did not meet her burden to show a genuine issue of material fact on the elements of hostility or good faith, we conclude that the district court properly granted summary judgment in favor of the defendants on her adverse possession claim.

## VI.     Unjust Enrichment

¶ 42     Baumberger contends the district court erred by granting summary judgment on her unjust enrichment claim. We disagree.

¶ 43     "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). Baumberger asserted her unjust enrichment claim as an alternative to her other claims for relief, arguing that, if the court rejected her other claims and found the December 14 sale valid, "it would be unjust to allow the [defendants] to realize and retain the benefits of those transactions without paying [her] for all amounts, plus interest, she has incurred

in maintaining and improving the [property]." Specifically, in response to the defendants' motion for summary judgment, she argued that (1) since her mother's death, she had "paid for excavation work, trench work, fencing, tree cutting, and well work among other items in order to maintain the [property]"; and (2) "if the "[d]efendants are determined to be the rightful owners of the [property] after trial, equity requires [them to] reimburse [her] for these expenditures since [they] would receive the benefits of this work at [her] expense under circumstances that make it unjust for them to retain these benefits without paying commensurate compensation."

¶ 44 The district court found that, although Baumberger provided evidence of the work she performed on the property, she "offer[ed] no argument as to *why* it would be unjust for a party validly taking title to real property to retain the benefit of a previous possessor's work on such real property." We agree with the district court. Although Baumberger raised detailed arguments concerning the validity of the December 14 sale, she did not explain why, *if* the sale was ultimately deemed valid, it would be unjust for the defendants to retain the benefit of her improvements to the property. As the

district court explained, we do not consider arguments presented in a perfunctory and undeveloped manner. *See In re Marriage of Vittetoe*, 2016 COA 71, ¶ 39; *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007).

¶ 45    For the first time on appeal, Baumberger also argues that she is entitled to compensation for her improvements to the property under C.R.C.P. 105(e), which provides,

> Where a party or those under whom he claims, holding under color of title adversely to the claims of another party, shall in good faith have made permanent improvements upon real property (other than mining property) the value of such improvements shall be allowed as a set-off or as a counterclaim in favor of such party, in the event that judgment is entered against such party for possession or for damages for withholding of possession.

¶ 46    However, "[a]rguments not raised before the trial court may not be raised for the first time on appeal." *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 18 (quoting *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n.10 (Colo. 2004)). Further, Baumberger does not explain why the provision regarding a party "holding under color of title" should apply to her, since she knew she was not the title owner. *See Hinojos v. Lohmann*, 182 P.3d 692,

23

700 (Colo. App. 2008) ("Color of title is defined as that which in appearance has the semblance of title, either legal or equitable, but which in fact is no title. Thus, color of title 'can only arise out of a conveyance purporting to convey title' to real property, but which, because of some defect, fails to do so." (quoting *First Nat'l Bank of Wray v. McGinnis*, 819 P.2d 1080, 1083 (Colo. App. 1991))).

¶ 47 We thus conclude that the district court properly granted summary judgment in favor of the defendants on Baumberger's unjust enrichment claim.

## VII. Evidentiary Issues

¶ 48 Baumberger contends that the district court erred by ruling against her on two evidentiary issues. First, she contends the court erred by ruling that, although a certain trust document would be admissible at trial, it was inadmissible at the summary judgment

stage.[4] And second, she contends the court erred by declining to deem allegations in her complaint concerning the defaulted parties (Big Ray's and Teresa Flores) as admitted against the defendants for purposes of demonstrating the existence of a genuine issue of material fact.

¶ 49     Because the district court's evidentiary rulings were relevant only at the summary judgment stage, and we are reversing and remanding the case for trial, we need not address them.

---

[4] In her response to the defendants' motion for summary judgment, Baumberger submitted a declaration of trust signed by Audra Coffey, Mary Baumberger, and Raymond Flores. The declaration included a legal description of the property and stated that "Raymond E Flores, of Big Rays Enterprises" would hold "said property and all right, title and interest in and to said property and all furniture, fixtures and personal property situated therein" in trust for the benefit of Audra Coffey and Mary and Earl Baumberger. The defendants moved to exclude the declaration of trust, arguing that Baumberger had not offered evidence of its authenticity. In her response to the defendants' motion to exclude, Baumberger submitted affidavits from herself and her son authenticating the declaration of trust. The district court ruled that the affidavits were sufficient to authenticate the declaration of trust for purposes of admissibility at trial but that, because they were submitted in response to the defendants' motion to exclude rather than in response to the defendants' motion for summary judgment, the declaration of trust was inadmissible at the summary judgment stage.

## VIII.  Attorney Fees

¶ 50    The defendants request an award of appellate attorney fees under C.A.R. 38(b), which permits an award of attorney fees if we determine that an appeal is frivolous, *Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70, and section 13-17-102(4), C.R.S. 2025, which permits an award of attorney fees if we find that a party brought or defended an action (or part of an action) that lacked substantial justification, meaning it was substantially frivolous, groundless, or vexatious.  Because Baumberger prevailed on several of her appellate contentions, we deny the defendants' request for attorney fees incurred on appeal.

## IX.    Disposition

¶ 51    The district court's summary judgment on Baumberger's adverse possession and unjust enrichment claims is affirmed.  Its summary judgment on her quiet title, declaratory judgment, and constructive trust claims, as well as W.D. Real Estate's quiet title and declaratory judgment counterclaims, is reversed, and the case is remanded for trial on those claims and counterclaims.

JUDGE FREYRE and JUDGE PAWAR concur.